# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THREE LOWER COUNTIES COMMUNITY HEALTH SERVICES, INC., on behalf of itself and others similarly situated | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:07CV0844 (ESH) |
| MICHAEL O. LEAVITT,  Secretary of Health and Human Services, | ) ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT'S MOTION TO DISMISS

_____Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

defendant Michael O. Leavitt, Secretary of Health and Human Services, respectfully moves this

Court to dismiss this action for lack of subject matter jurisdiction, or, in the alternative, for

failure to state a claim upon which relief can be granted.  The grounds for this motion are set out

in Defendant's Memorandum in Support of Motion to Dismiss, filed herewith.


Dated: August 8, 2007                    Respectfully submitted,


                         _____/ s /_____
                         JEFFREY A. TAYLOR
                         United States Attorney
                         D.C. Bar No. 498610

_____ / s / _____
MEGAN L. ROSE
Assistant United States Attorney
N.C. Bar No. 28639
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7220/FAX: (202) 514-8780

ROBERT W. BALDERSTON
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare and Medicaid Services
 Division
330 Independence Ave., S.W.
Cohen Building, Room 5309
Washington, D.C. 20201
(202) 619-3601/FAX: (202) 401-1405

Counsel for the Secretary

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THREE LOWER COUNTIES COMMUNITY HEALTH SERVICES, INC., on behalf of itself and others similarly situated | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 1:07CV0844 (ESH) |
| MICHAEL O. LEAVITT, Secretary of Health and Human Services, | ) ) ) ) |
| Defendant. | ) ) ) |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S
### MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### INTRODUCTION

Plaintiff has failed to present and pursue a proper claim through the administrative process as prescribed by the Medicare statute.  Plaintiff's failure to exhaust administrative remedies is fatal to this Court's jurisdiction.  Moreover, Plaintiff has failed to demonstrate that it has suffered an "injury in fact" necessary to satisfy the standing requirements of Article III of the Constitution.  Accordingly, Plaintiff's claims in the instant case should be dismissed.

Medicare is a "massive" and "complex" health-insurance program, Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 13 (2000), that processes almost a billion claims a year, 2004 CMS Statistics 43 (HHS October 2004), pursuant to "hundreds of pages of statutes and thousands of pages of often interrelated regulations."  Illinois Council, 529 U.S. at 13. Claims for Medicare payment by health care providers that have furnished services to program

-3-

beneficiaries are "channeled," id. at 12, through an "adjudicative structure," Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 96 (1995), the purpose of which is to produce a "final" decision that a provider may ultimately challenge in federal court. 42 U.S.C. § 1395oo(f)(1). The process begins when a health care provider submits a cost report and a government contractor, known as a Medicare "fiscal intermediary," renders a determination of the amount of reimbursement due the providers for the period covered by the cost report.

Rather than file a cost report and start the process of pursuing its administrative remedies, which are necessary prerequisites to this Court's subject matter jurisdiction, Plaintiff is before this Court having merely submitted "letters" to the Secretary raising questions about "facial" challenges to his regulations. More specifically, Plaintiff, a "federally-qualified health center" ("FQHC"), wrote three letters to the Provider Reimbursement Review Board ("PRRB" or "the Board"), an adjudicative body within HHS that sits to resolve Medicare provider reimbursement disputes. In this correspondence, Plaintiff sought from the Board an advisory opinion regarding two aspects of the Secretary's regulations that are used to determine the "reasonable costs" of operating a FQHC. Despite clear instructions to the contrary, however, Plaintiff never filed a proper administrative appeal with the Secretary, never identified relevant cost reporting periods in dispute and, to this point, has never identified any amount in controversy, let alone the $10,000 threshold amount statutorily required for review of the Secretary's administrative decision. As a result, the Board properly refused to act in response to Plaintiff's letter writing campaign.

Challenges to Medicare payment policies, such as those brought by Plaintiff herein, raise claims that "arise under the Medicare Act." Such claims must satisfy the jurisdictional

prerequisites for judicial review set forth in the Medicare statute before they can be entertained by the Federal district courts. A question concerning the amount Medicare is obligated to pay for particular health care services cannot be heard by the courts until after a claim for payment has been presented to the Secretary, denied by the contractor which makes the initial claim determination, and pursued through the administrative appeals process. See Illinois Council, 529 U.S. at 10-25; Heckler v. Ringer, 466 U.S. 602 (1984); 42 U.S.C. § 1395ii; 42 U.S.C.§ 405(h). It makes no difference to this jurisdictional analysis whether the matter involves an issue concerning the rule-making provisions of the Administrative Procedure Act ("APA"), a regulatory or statutory challenge, a constitutional claim, or a challenge to some other alleged legal infirmity in the agency's action. If the matter has its genesis in a claim for benefits or payment under the Medicare Act, then it arises under the Act and cannot be heard by the district courts until the administrative prerequisites for review have been exhausted. Illinois Council at 13-14, 23. This is the precise jurisdictional infirmity presented by Plaintiff's Complaint. Because Plaintiff has not presented and pursued a claim through the administrative process as prescribed by the Medicare statute, the Court should dismiss the instant complaint.

Furthermore, Plaintiff does not demonstrate that it has suffered an "injury in fact" necessary to satisfy the standing requirements of Article III of the Constitution. While Plaintiff generally alleges some fear of the Secretary's challenged reasonable cost regulations being applied to some request for payment, Plaintiff does nothing to demonstrate that either of the two reasonable cost measures about which it complains have ever actually been applied to Plaintiff for any fiscal year in question, creating any particular amount of reimbursement that might be in dispute. This failure deprives Plaintiff of a stated "injury in fact" necessary for this Court to

exercise its jurisdiction as an Article III court.  Like its failure to exhaust its available remedies,

Plaintiff's lack of standing deprives this Court of jurisdiction over Plaintiff's claims.

**STATUTORY AND REGULATORY BACKGROUND**

**I.    The Medicare Program**

Title XVIII of the Social Security Act, commonly known as the "Medicare statute,"

establishes a program of health insurance for the elderly and disabled.  Medicare Part A is a

mandatory program providing coverage for inpatient hospital and other institutional care.  42

U.S.C. § 1395d.  Part B is a voluntary, supplemental program that covers "medical and other

health services" not reimbursable under Part A, such as physician and other outpatient costs.  42

U.S.C. § 1395k.  Medicare is administered by the Secretary through the Centers for Medicare &

Medicaid Services ("CMS").

Of particular relevance here, Congress has required Medicare to pay for services that

Medicare individuals receive at "federally-qualified health centers."  A federally-qualified health

center is defined by statute to include an entity which is "receiving a grant under section 254b of

this title."  42 U.S.C. § 1395x(aa)(1).  Section 254, the codification of Section 330 of the Public

Health Services Act, authorized the Secretary to make grants to health centers for the costs of

providing specified primary health services and other additional health care services to

"medically underserved" communities throughout the United States, including urban, rural,

migratory, homeless, and public-housing populations.  42 U.S.C. § 254b.

Regarding Medicare's payment to FQHC's, the focus is on payment for costs "which are

reasonable and related to the cost of furnishing such services."  42 U.S.C. § 1395l(a)(3).

Congress requires Medicare to pay 80 percent of "costs which are reasonable and related to the

cost of furnishing such services or which are based on such other tests of reasonableness as the Secretary may prescribe in regulations . . . ." Id. Congress has deferred to the Secretary's expertise and granted him "broad discretion" to determine which costs are reasonable costs, the exercise of which is entitled to "great deference." Humana, Inc. v. Heckler, 758 F.2d 696, 699 (D.C. Cir. 1985).

As described above, Medicare pays federally-qualified health centers an all-inclusive per visit payment amount based on 80 percent of the facility's "reasonable costs" of furnishing services to Medicare beneficiaries, as determined through the filing of an annual Medicare "cost report. 42 C.F.R. § 405.2470(c)(2). This determination of reasonable cost is subject to, among other requirements, a Medicare "per visit payment limit" and a "productivity screen." These two particular payment provisions, described below, are the ones Plaintiff seeks to challenge in its Complaint. Complaint ¶¶ 62, 68.

Pursuant to his statutory duty to make payment for costs "which are reasonable and related" to the cost of furnishing FQHC services, 42 U.S.C. § 1395l(a)(3), in June of 1992 the Secretary issued a final rule with comment period setting forth requirements for coverage and payment of FQHC services under the Medicare program. 57 Fed. Reg. 24,961 (June 12, 1992). After receiving comments on this rule (and after some statutory changes made by the Omnibus Budget and Reconciliation Act of 1993 that are not relevant here), the Secretary issued a final rule in April of 1996. 61 Fed. Reg. 14,640 (April 3, 1996). At the time he issued his final rule, the Secretary stated that "[p]ayment provisions for FQHCs parallel the payment provisions for payment of [rural health clinics]" and that the Medicare program would pay "on an all-inclusive rate basis," that would be subject to "payment limits" to the all-inclusive rate per visit. Id. Thus,

the Secretary's regulations limit FQHC Medicare reimbursable per-visit costs based on a "per

visit payment limit"; that payment limit, in turn, depends on whether the health center is located

in an urban or rural area.  See 42 C.F.R. § 405.2466(b); see also 61 Fed. Reg. 14,640, 14,654-55

(April 3, 1996) (responding to comments on urban/rural payment distinction).[1]

## II.    The Medicare Cost Reporting Process Generally

Medicare currently pays out more than $270 billion in claims every year.  2004 CMS

Statistics at 26.  To handle this staggering volume, the Secretary uses contractors, usually private

insurance companies, to make payment determinations for health-care providers and individual

beneficiaries.  42 U.S.C. §§ 1395h, 1395u.  When contractors process Part A claims, they are

known as "fiscal intermediaries."  42 C.F.R. § 421.100.  Currently, 28 fiscal intermediaries

process $166 billion in claims for about 6,000 hospitals, 15,000 skilled nursing facilities, and

other providers of institutional care.  2004 CMS Statistics at 16, 19, 27, 42.  Contractors also

process Part B claims in their role as Part B "carriers."  42 C.F.R. §§ 421.200, 421.5(c).

## III.    Cost Reports, Intermediary Determinations, and Administrative Appeals

Medicare Part A providers of services are required to submit annual cost reports to their

designated intermediary.  See 42 C.F.R. §§ 413.20-413.24.  To permit efficient processing of

---

[1]  Another benchmark the Medicare program uses to determine whether a FQHC's costs are reasonable is what is referred to as a "productivity screen."  Federal regulations governing payment to FQHCs under the Medicare program use a "productivity screen" under which physicians must have an average of at least 4,200 patient visits per year.  See 61 Fed. Reg. 14,640, 14,650-51 (April 3, 1996) (preamble to final rule).  FQHCs that do not meet this numerical screen are subject to reduced Medicare payment unless they obtain a waiver.  As the agency stated when it promulgated regulations in 1996, "the FQHC's intermediary has the authority to modify the productivity guidelines. [A] FQHC that has atypical circumstances may request exceptions to the guidelines from its intermediary."  61 Fed. Reg. 14,640, 14,651 (April 3, 1996).

these voluminous reports, the Medicare regulations require health care providers to "furnish such information to the intermediary as may be necessary" to "[a]ssure proper payment by the program." 42 C.F.R. § 413.20(d)(1)(i). This includes all "cost, revenue, statistical, and other information pertinent to reimbursement." 42 C.F.R. § 413.20(c)(2).[2]

On the basis of the cost report submitted by the provider, the intermediary makes a "determination," also known as a "notice of program reimbursement" ("NPR") of the total amount the provider should be reimbursed for the services it rendered to Medicare beneficiaries during the reporting period. 42 C.F.R. § 405.1803. The "parties to the intermediary's determination are the provider and any other entity found by the intermediary to be a related organization of the provider," 42 C.F.R. § 405.1805, within the meaning of 42 C.F.R. § 413.17.

The NPR is "final and binding" unless it is either appealed or reopened within the time frames established by Medicare statutes and regulations. 42 C.F.R. § 405.1807. If the amount in controversy is at least $1,000 but less than $10,000, the provider may demand a hearing before the intermediary itself, 42 C.F.R. § 405.1809, within 180 days of the date of the NPR. 42 C.F.R. § 405.1811(a). If the amount in controversy is $10,000 or more, the provider may demand a hearing before the PRRB. 42 U.S.C. §§ 1395oo(a)(1)-(2); 42 C.F.R. § 405.1835. The demand for a Board hearing must be made within 180 days after the intermediary's determination is mailed to the provider. 42 U.S.C. § 1395oo(a)(3); 42 C.F.R. § 405.1841(a).

---

[2] See also 42 C.F.R. § 413.24(c) (provider must furnish "cost information" that is "[a]dequate" to "support payments made for services furnished to beneficiaries"), § 413.20(a) (provider required to "maintain sufficient financial records and statistical data for proper determination of costs payable under the program" and must use "reporting practices that are widely accepted in the hospital and related fields"), § 413.20(c)(1) (provider must have an "adequate ongoing system for furnishing the records needed to provide accurate cost data and other information capable of verification by qualified auditors").

If it has jurisdiction to hear a matter, the Board holds a hearing and renders a decision, 42 C.F.R. § 405.1871(a), that the Secretary, in his discretion, may then review. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875. After a final decision is reached, the provider 60 days to seek judicial review in district court. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877.

**IV.    Challenges to the Validity of the Medicare Statute or Regulations – Expedited Judicial Review**

As noted above, a provider may seek judicial review of any final determination of the PRRB or of the Secretary's review of a PRRB decision. 42 U.S.C. §1395oo(f)(1). In addition, a provider may obtain "judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matter in controversy whenever the Board determines . . . that it is without authority to decide the question." Id. This type of judicial review is known as "expedited judicial review" or "EJR." It applies to situations in which a provider seeks to challenge the facial validity of a statutory or regulatory provision bearing on the amount of reimbursement due the provider.

The Secretary has promulgated regulations implementing the statutory provision concerning EJR. These regulations allow a provider to submit a written request to the PRRB "to determine whether the Board has the authority to decide a question of law, regulations, or CMS Rulings relevant to and controlling upon an issue to be reviewed by the Board." See 42 C.F.R. § 405.1842(b). The provider seeking EJR must

(i) Identify the issues and the controlling law, regulation or CMS Ruling for which the Board is to make a determination;
(ii) Allege and demonstrate that there are no factual issues in dispute;
(iii) Contain an explanation of why the provider believes the Board cannot decide the legal issue or issues that are in dispute; and
(iv) Include all other information or details that support the request.

-10-

42 C.F.R. § 405.1842(d)(2).  The PRRB must either grant or deny the request for EJR within 30

days.  42 C.F.R. § 405.1842(b), (g).  In making this decision, the PRRB must consider:

    (1) The controlling facts in the case;
    (2) The applicability of law, regulations, or CMS rulings;
    (3) Whether there are factual issues for the Board to resolve; and
    (4) Whether there are legal issues within the authority of the Board to decide.

42 C.F.R. § 405.1842(f).  Further, "[i]f there are factual or legal issues in dispute on an issue

within the authority of the Board to decide, the Board will not make an expedited review

determination on the particular issue but will proceed with a hearing."  42 C.F.R. §

405.1842(g)(2).  In exercising its authority to grant or deny EJR, and exercising its other powers,

the PRRB must comply with all the provisions of the Medicare Act, regulations issued

thereunder, and CMS Rulings.  See 42 C.F.R. § 405.1867.

## V.    The Requirements Applicable to Federally-Qualified Health Centers

    FQHCs are required to submit a cost report to their fiscal intermediary and are entitled to

a hearing before the PRRB if they are "dissatisfied" with a final determination of program

reimbursement.  42 U.S.C. § 1395oo(a)(1), (j).  As a requirement of participating in the Medicare

program and maintaining approval as a FQHC, health center organizations are required to

prepare and submit an FQHC Medicare cost report following the end of the organization's

selected cost reporting period.  42 C.F.R. § 405.2470(c)(2).  The Medicare cost report is the

health center's official claim for Medicare reimbursement for services rendered to Medicare

beneficiaries.  Once the FQHC Medicare cost report is submitted to the fiscal intermediary, the

intermediary reviews the cost report and issues an NPR.  42 C.F.R. § 405.2466(c).  If a FQHC is

dissatisfied with the intermediary's determination contained in the NPR, it can request "a hearing

under the procedures set forth in subpart R of this part," which are the procedures for a hearing

before the PRRB.  42 C.F.R. § 405.2466(c)(2).

## STATEMENT OF FACTS

**I.      Plaintiff's Letters to the Provider Reimbursement Review Board**

On October 13, 2006, the PRRB received a letter from Plaintiff indicating that it would

like a "ruling" as to whether the Board believes it would have jurisdiction over two challenges to

the Secretary's regulations interpreting "reasonable cost" payment for FQHCs; namely, the same

two challenges Plaintiff brings in the instant Complaint regarding the per-visit payment limit and

the productivity screen.  See Attachment A, Letter from Counsel for Plaintiff to PRRB (Oct. 10,

2006) at 1.  Plaintiff's letter indicated that, if the Board did believe it could have jurisdiction over

its claims, Plaintiff was requesting "the PRRB immediately to place the challenges on its appeal

docket."  Id. at 1-2.  Plaintiff's letter does not identify a fiscal year in dispute, a notice of program

reimbursement from which Plaintiff is attempting to appeal, or assert any amount in controversy.

By letter dated November 9, 2006, the Board informed Plaintiff that "the Board does not furnish

advisory opinions on jurisdiction.  The only jurisdictional rulings issued by the Board involve

cases pending before it."  See Attachment B, Letter from Suzanne Cochran, Esquire, Chairman,

PRRB, to Plaintiff (Nov. 9, 2006).

In response to the Board's letter of November 9, 2006, Plaintiff once again wrote the

PRRB stating that even though the claims Plaintiff was raising "were not being raised in

connection with a specific cost report," see Attachment C, Letter from Counsel for Plaintiff to

PRRB (Dec. 21, 2006) at 1, Plaintiff was attempting to solicit the Board's opinion about what to

do when "a provider is seeking to challenge a regulation or cost limit on its face."  Id.  Plaintiff

went on to state that, as a result of the earlier letter from the PRRB "we presume that the PRRB has no administrative process to challenge cost limits on their face." Id.

In response, on January 4, 2007, the Board sent Plaintiff an acknowledgment letter assigning Plaintiff a case number before the Board, informing Plaintiff of how to obtain instructions for proceeding before the Board, and notifying Plaintiff of relevant due dates (i.e., dates for submitting position papers to the Board). See Attachment D, Acknowledgment of Appeal and Critical Due Dates from PRRB to Counsel for Plaintiff (Jan. 4, 2007) at 1-2. Less than two weeks later, Plaintiff once again wrote the Board and stated that, rather than follow the appeals process offered by the Board's procedures, Plaintiff would "rely" on the earlier letter of the PRRB which, to Plaintiff's understanding, "indicated that no relief could be afforded through the process [the Board] would commit us to follow." See Attachment E, Letter from Counsel for Plaintiff to PRRB (Jan. 16, 2007) at 1; but see Attachment B, Letter from Suzanne Cochran, Esquire, Chairman, PRRB, to Plaintiff (Nov. 9, 2006) (merely stating "the Board does not furnish advisory opinions on jurisdiction. The only jurisdictional rulings issued by the Board involve cases pending before it.")

## II.    The Decision of the Provider Reimbursement Review Board

Approximately three months after Plaintiff submitted these various letters to the PRRB, the Board issued a decision dismissing Plaintiff's appeal for lack of jurisdiction. See Attachment F, Decision of the PRRB (Apr. 20, 2007). The Board relied upon the Medicare statute and regulations applicable to Board hearings and stated that a provider has a right to a hearing with respect to costs claimed on a "cost report" if the Plaintiff is "dissatisfied" with the final determination of the intermediary, if the amount in controversy is $10,000 or more, and if the

-13-

appeal is filed within 180 days of the final determination of the intermediary.  Id. at 2.  The

Board found that Plaintiff had not met a single one of these jurisdictional requirements in the

course of submitting its various letters.  If and when the Plaintiff was able to comply with the

requirements for a Board hearing, the PRRB stated that it would, at that time, determine if it has

jurisdiction over the substantive issue – i.e., the challenge to the per visit payment limit and

productivity screen – and "whether expedited judicial review under 42 U.S.C. § 1395oo(f) and 42

C.F.R. § 405.1842 is appropriate."  Id.

III.    **Plaintiff's Complaint**

Rather than pursue the administrative remedies outlined in the Board's decision, Plaintiff

filed the instant Complaint in this Court.  Plaintiff in this action asserts that it is a "federally

qualified health center," Complaint ¶ 5, which seeks to set aside the per visit payment limit

described above as "arbitrary and capricious, and unlawful."  Id. at ¶ 62.  Plaintiff also seeks to

set aside as "arbitrary and capricious" the Secretary's productivity screen.  Id. at Complaint ¶ 68.

The Complaint does not state, however, whether the payment limit or the productivity screen has

ever been applied to any of Plaintiff's cost reports, nor does the Complaint allege, if these two

"reasonable cost" measures were set aside, how much additional payment Plaintiff believes it

would be entitled to, if any.

The Complaint merely presents a request for an order which, Plaintiff hopes, would

entitle it to increased payment under the Medicare Act.  Plaintiff's Prayer for Relief requests an

order declaring the per visit cap and productivity screen "arbitrary, capricious, and otherwise

unlawful,"  Complaint at 29; an order "enjoining" the Medicare program from using the two

reasonable cost measures "in payments to FQHCs whose payments are currently reduced" by

-14-

either measure, id. at 29-30; and, lastly, an order directing Medicare to "re-calculate past FQHC payment rates paid under the Medicare program" without use of the per visit cap or productivity screen (subject to the "applicable" statute of limitations, which Plaintiff does not identify). Complaint at 30.

<u>**SUMMARY OF ARGUMENT**</u>

Plaintiff asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  Complaint ¶ 3.  However, from the substance of the Complaint and from the Prayer for Relief, it is clear that, at its core, Plaintiff's Complaint is for additional payment arising out of its participation in the Medicare Program.  As such, Plaintiff simply does not meet the subject matter jurisdictional requirements for this Court's review.  The case law on subject matter jurisdiction for disputes involving the Medicare program is well established.   Congress has set forth a specific avenue of review for claims arising under the Medicare Act.  For health center claims such as these, that avenue is spelled out at 42 U.S.C. § 1395oo.  <u>See also</u> 42 C.F.R. § 405.2466 (setting-forth process for obtaining NPR and subsequent appeal to the PRRB).  The statute requires the presentment of a claim for payment to Medicare, the exhaustion of administrative remedies, and a final, judicially reviewable decision on the claim from the Secretary.  Plaintiff's failure to bring this suit as prescribed in the Medicare statute is fatal to its claims.

As set forth in 42 U.S.C. § 405(h), made applicable to the Medicare statute by 42 U.S.C. § 1395ii, no action of the Secretary shall be subject to review except as provided for in the Medicare statute and "[n]o action against the United States . . . or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this

subchapter." 42 U.S.C. § 405(h).  This statute articulates the exclusivity of the Medicare appeal

provisions as the sole avenue to judicial review of the Secretary's Medicare decisions.  Yet

Plaintiffs concede that they have presented no claim for payment to the Secretary and have not

attempted to avail themselves of this avenue of review.  See Attachment C, Letter from Counsel

for Plaintiff to PRRB (Dec. 21, 2006) at 1 (issues being raised "were not in connection with a

specific cost report.").

Nonetheless, Plaintiff endeavors to carve out a new route to judicial review for itself.

Before the PRRB, Plaintiff argued that its claim is different because it present a "facial"

challenge to a regulation that need not go through the administrative process.  Plaintiff's

assertion is legally and factually erroneous.  Because Plaintiff's regulatory challenge has been

brought specifically to obtain payment for services that it believes would not be payable by

Medicare under the current rules, at its core, its claim for any additional payment would clearly

arise under the Medicare Act.  Such challenges to the Medicare rules must be presented in the

context of a claims denial, regardless of whether they involve a statutory or constitutional

challenge, let alone a challenge to the validity of a regulation.   See Illinois Council, 529 U.S. at

11-12.

Plaintiff has chosen not to avail itself of the available administrative remedies, attempting

instead to somehow distinguish its claim from the many that involve review of the Secretary's

regulations.  The Complaint conclusively states that Plaintiff has "sought administrative review

of the issues herein," but Plaintiff altogether ignores that it has failed to exhaust the appropriate

avenues of administrative review.  Congress was clear: to gain access to the administrative

process, plaintiffs need to provide services and file a claim for payment.  The denial of that claim

will provide access to the administrative appeals process and eventually "open the doors" to the courthouse.

In addition, Plaintiff has not established that it has standing to bring this lawsuit. It has not identified any particular fiscal year in dispute and it has not identified, for any fiscal year, by what amount its reimbursement was reduced as a result of the per visit payment limit or the productivity screen. Plaintiff's failure to allege any amount in controversy deprives it of a stated "injury in fact," let alone an injury that rises to the level of the $10,000 threshold necessary to review a decision of the PRRB. As such, Plaintiff is without standing to maintain a suit before this Article III court. For this reason, and for all the other threshold reasons listed above, the Complaint in this matter is premature and without merit, and it should be dismissed by this Court.

## ARGUMENT

**I.    This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims**

    **A.    Plaintiff Has Failed to Bring Its Claims as Mandated By the Medicare Statute.**

The Federal Rules of Civil Procedure require a plaintiff to affirmatively state the basis upon which jurisdiction of the federal court is asserted. Fed. R. Civ. P. 8(a)(1). Federal courts are of limited jurisdiction and the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does in fact exist. The complaint must state on its face the grounds upon which

jurisdiction is asserted. <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178 (1935); <u>Gold Washing and Water Co. v. Keyes</u>, 96 U.S. 199 (1887).

In the instant case, Plaintiff fails to affirmatively demonstrate the statutory basis for jurisdiction. Federal court jurisdiction over Medicare payment issues is limited to review of the "final decision" of the Secretary, 42 U.S.C. § 1395oo(f)(1), issued after completion of review by the PRRB. In the context of FQHCs, that process begins with the submission of a cost report to a fiscal intermediary, a private company that reviews the claim for payment and makes an initial determination on behalf of the Secretary. 42 C.F.R. § 405.2466(c). After the initial determination, the FQHC may then appeal through an administrative process, culminating in a final decision of the Secretary. That decision is reviewable in federal district court if amount-in-controversy requirements are met. <u>See</u> 42 U.S.C. § 1395oo(a)(2). The statute expressly precludes the general federal-question jurisdiction of 28 U.S.C. § 1331 upon which Plaintiff attempts to rely.[3] <u>See</u> 42 U.S.C. §§ 405(h), 1395ii. Indeed, federal courts have long held that 42 U.S.C. §§ 405(h), 1395ii preclude federal question jurisdiction over Medicare provider reimbursement disputes, and that 42 U.S.C. §§ 1395oo – which established the PRRB hearing process – is the exclusive avenue by which providers can secure judicial review of such disputes.

_____

[3] Plaintiff also attempts to rely on 28 U.S.C. § 1343 as a basis for this Court's jurisdiction. That provision has no applicability here, as this action does not involve civil rights or the elective franchise. This is a Medicare payment case, not a civil rights or voting rights case. At any rate, since this case "arises under" the Medicare statute, that statute provides the exclusive basis for subject matter jurisdiction. <u>See Illinois Council</u>, 529 U.S. at 10-25; <u>Heckler v. Ringer</u>, 466 U.S. at 614-15. In addition, Plaintiff attempts to assert that its action "is brought under 5 U.S.C. § 702." Complaint ¶ 3. To be clear: the APA does not grant jurisdiction. The APA may dictate standards of review and elements of agency practice, but the Supreme Court has articulated that it is not an independent grant of subject matter jurisdiction. <u>Your Home</u>, 522 U.S. at 456; <u>Califano v. Sanders</u>, 430 U.S. 99, 105 (1977).

See Athens Comm. Hosp., Inc. v. Shalala, 686 F.2d 989, 992-92 (D.C. Cir. 1982); accord

Hospital Assoc. of Rhode Island v. Secretary of HHS, 820 F.2d 533, 537 n.8 (1st Cir. 1987); St.

Joseph's Hosp. of Kansas City v. Heckler, 786 F.2d 848, 850 (8th Cir. 1986); V.N.A. of Greater

Tift County, Inc. v. Heckler, 711 F.2d 1020, 1025 (11th Cir. 1983); Hadley Mem. Hosp. v.

Schweiker, 689 F.2d 905, 909 (10th Cir. 1982). Since FWHCs are deemed "providers" for

purposes of appeal to the PRRB, see 42 U.S.C. § 1395oo(j), this jurisdictional principle applies

foursquare to this case.

 The Supreme Court has held that the statute's comprehensive remedial scheme "demands

the 'channeling' of virtually all legal attacks" on Medicare payment policies "through the

agency" before they can be heard in district court. Illinois Council, 529 U.S. at 13. For example,

in Weinberger v. Salfi, 422 U.S. 749 (1975), the Court held that a class of applicants for benefits

could not challenge the constitutionality of a Social Security statute unless they first obtained an

initial determination by the Secretary through the administrative process. In Heckler v. Ringer,

466 U.S. 602 (1984), the Court applied Salfi to hold that exhaustion of the claims process was

mandatory before plaintiffs could challenge a policy of the Secretary not to pay for a particular

surgical procedure under Medicare Part A. The Court explained that it made no difference that

the only remedies the plaintiffs sought were injunctive and declaratory relief, rather than the

payment of money for services. See id. at 623. And it rejected the argument that the expense

and uncertainty associated with delaying judicial review until after completion of the

administrative process could be used as a basis for circumventing the jurisdictional prerequisites

of the Medicare statute. See id. at 627. See also American Chiropractic Assn. v. Leavitt. 431

F.3d 812, 816 (D.C.Cir. 2005); National Athletic Trainers' Assoc. v. United States Dept. of

Health and Human Services, 455 F.3d 500, 503 (5th Cir. 2006).

In this case, Plaintiff admits both that its claim "arises under" the Medicare statute, Complaint ¶ 2, thus rendering the Medicare statute the exclusive basis of jurisdiction, Illinois Council, 529 U.S. at 10-25; Heckler v. Ringer, 466 U.S. at 614-15, and that it has failed to channel its claim through an avenue of administrative review which clearly applies to the issues raised in its Complaint.  See Attachment C, Letter from Counsel for Plaintiff to PRRB (Dec. 21, 2006) at 1 (issues being raised "were not in connection with a specific cost report.").  That failure is fatal to this Court's jurisdiction.  In its Complaint, Plaintiff alleges that the Secretary's regulations implementing "reasonable" cost reimbursement for FQHCs are inconsistent with the statute and are invalid under the Administrative Procedure Act.  The channeling required by 42 U.S.C. § 405 does not mean that this claim will escape judicial review altogether.  To be sure, Plaintiff has a right to submit a claim for reimbursement to the intermediary, Bethesda Hosp. Ass'n v. Bowen, 485 U.S. 399, 404-05 (1988), to appeal any adverse intermediary determination to the PRRB if the jurisdictional prerequisites are met, 42 U.S.C. § 1395oo(a)(1)(A)(i), and to seek judicial review of any adverse decision of the Board.  42 U.S.C. § 1395oo(f)(1).  Similarly, if, as Plaintiff contends, it is truly presenting a "facial" challenge to the validity of the Secretary's regulations – and by this filing, the Secretary is in no way prejudging that to be the case – then the Medicare statute and regulations may provide for expedited judicial review of such a challenge.  Plaintiff's decision not to pursue its claims through any of these well established review processes means Plaintiff cannot at this time obtain review from this Court.

**B.    Plaintiff's Challenges Arise Under the Medicare Act and Must Be Channeled; Its Arguments Do Not Fit Within Any Recognized Exception to the Channeling Requirement.**

The Supreme Court has recognized one narrow exception to the requirement that challenges under the Medicare statute must be channeled through the administrative appeals process.  That narrow exception is only where a plaintiff would have no possible avenue for availing themselves of the administrative process, usually because they have no means of filing a payment claim.  See Illinois Council, 529 U.S. at 11-12;[4] see also American Chiropractic Ass'n, Inc. v. Leavitt, 431 F.3d 812, 815 (D.C. Cir. 2005).  However, as noted above, Plaintiff has an available avenue of administrative review available to it under the Medicare statute.  Plaintiff need merely file a claim for certain costs, have that claim denied and pursue the claim through the administrative process.  Plaintiff simply has chosen not to avail itself of this avenue of review.

Plaintiff appears to have two possible theories in seeking immediate review from this Court.  First, it argues that it has already solicited the PRRB's views on whether the Board has

_____

[4] In Illinois Council the Supreme Court made clear that the exception to the channeling requirement is extremely narrow.  Specifically, it held that Section 405(h) is inapplicable only "where its application to a particular category of cases, such as Medicare Part B 'methodology' challenges, would not lead to a channeling of review through the agency, but would mean no review at all."  529 U.S. at 17, 19.  The Court noted that the set of cases in which Section 405(h) would lead to "no review" is very limited:

> [W]e do not hold that an individual party could circumvent § 1395ii's channeling requirement simply because that party shows that postponement would mean added inconvenience or cost in an isolated, particular case.  Rather, the question is whether, as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into complete preclusion of judicial review.

Id. at 22-23.

jurisdiction to review the "issues raised herein," Complaint ¶ 4, and goes on to "quote" the Board as stating that it "lack[ed] jurisdiction over the appeal." Id. What the Board actually stated, however, was that "the [Plaintiff] has not identified a final determination, the fiscal year end or the amount in controversy for the issues it seeks to appeal as required by the [Medicare] statute and regulation," and that, if and when the Plaintiff "is able to comply with these requirements," the Board will determine if it has jurisdiction and whether "expedited judicial review" is appropriate. See Attachment F, Decision of the PRRB (Apr. 20, 2007) at 2. It is only by taking the Board's pronouncements out of context that Plaintiff can even begin to argue that it has already presented the "issues raised" in its Complaint for administrative review. Plaintiff has not presented those issues to the Secretary and exhausted the remedies available to it to press these issues, because it has failed to perfect a proper cost report appeal before the PRRB.

Second, Plaintiff argues that its is not an ordinary administrative appeal, but that it "seeks[s] to challenge a regulation or cost limit on its face." See Attachment C, Letter from Counsel for Plaintiff to PRRB (Dec. 21, 2006) at 1. As explained above, however, even if that does turn out to be the only issue presented by Plaintiff's appeal – and again, the Secretary does not prejudge what the exact contours of Plaintiff's appeal might turn out to be – that facial challenge must first be presented to the Secretary in the context of a fiscal year in dispute and an amount in controversy, and then it will be judged against the requirements for expedited judicial review. See Attachment F, Decision of the PRRB (Apr. 20, 2007). In any event, whether Plaintiff is arguing that it has already sought "administrative review," or whether it is arguing that administrative review is not necessary for its type of challenges, the Supreme Court, in

similar cases, has examined and rejected these very same arguments.[5]

The applicable jurisdictional analysis here begins with Section 405(h) of the Social

Security Act, which provides in relevant part:

> No findings of fact or decision of the Commissioner of Social
> Security shall be reviewed by any person, tribunal, or governmental
> agency except as herein provided.  <u>No action against the United
> States . . . or any officer or employee thereof shall be brought under
> section 1331 or 1346 of Title 28 to recover on any claim arising
> under this subchapter.</u>

42 U.S.C. § 405(h) (emphasis supplied).  Section 405(h) is made applicable to the Medicare

statute by operation of 42 U.S.C. § 1395ii, substituting the Secretary for the Commissioner of

Social Security.  <u>See</u>, <u>e.g.</u>, <u>Illinois Council</u>, 529 U.S. at 9.  The Supreme Court has construed the

final sentence of Section 405(h) broadly to bar federal jurisdiction in the context of claims

"arising under" the Medicare Act.[6]  <u>See</u>, <u>e.g.</u>, <u>Illinois Council</u>, 529 U.S. at 9-15; <u>Heckler v.

Ringer</u>, 466 U.S. at 621-22.  Instead, providers must "'channel' . . . virtually all legal attacks

through the agency," thus affording the agency "greater opportunity to apply, interpret, or revise

policies, or statutes without possibly premature interference by different courts applying

'ripeness' and 'exhaustion' exceptions case by case."  <u>Illinois Council</u>, 529 U.S. at 13 (Section

405(h) "prevents application of the 'ripeness' and 'exhaustion' exceptions").

_____

[5] To the extent Plaintiff is attempting to infer that it has somehow relied on (a misreading of ) the letters from the PRRB, that line of argument is also without merit.  "As a participant in the Medicare program," each provider has "a duty to familiarize <u>itself</u> with the legal requirements for cost reimbursement," <u>Crawford County</u>, 467 U.S. at 64 (emphasis added), and is "expected to know the law and may not rely on the conduct of Government agents contrary to law."  <u>Id</u>. at 63.

[6] The Supreme Court has broadly construed the "arising under" language to include any claims, like those of the Plaintiffs, for which the Medicare Act is "both the standing and the substantive basis for the presentation" of the claims.  <u>Ringer</u>, 466 U.S. at 615 (quoting <u>Salfi</u>, 422 U.S. at 760-61).

While the channeling requirement might result in "occasional individual, delay-related hardship," the Supreme Court has understood Congress to deem such hardship "justified" in the particular context of the Medicare Act, "a massive, complex health and safety program . . . embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts." Illinois Council, 529 U.S. at 13 (citing Ringer, 466 U.S. at 627; Weinberger v. Salfi, 422 U.S. 749, 762 (1975)).

The Supreme Court's precedents make clear that these jurisdictional prerequisites to suit apply to all manner of claims that arise under the Medicare statute and make subject matter jurisdiction contingent upon the channeling of all claims through the agency's review process. The Court has thus characterized the section 405(h) bar to other avenues of review as "sweeping and direct," Weinberger v. Salfi, 422 U.S. 749, 757 (1975), and explained that it applies to "all claims arising under the Medicare Act." Heckler v. Ringer, 466 U.S. 602, 615 (1984). Illinois Council presents a comprehensive review of this line of authority. In this decision, the Court stressed that so long as the claim arises under Medicare, the nature of the claim has no bearing on whether it must be channeled through exhaustion of the exclusive review provisions of the Medicare statute:

> Those cases themselves foreclose distinctions based upon the "potential future" versus the "actual present" nature of the claim, the "general legal" versus the "fact specific" nature of the challenge, the "collateral" versus "noncollateral" nature of the issues, or the "declaratory" versus "injunctive" nature of the relief sought. Nor can we accept a distinction that limits the scope of § 405(h) to claims for monetary benefits. Claims for money, claims for other benefits, claims of program eligibility, and claims that contest a sanction or remedy may all similarly rest upon

-24-

> individual fact-related circumstances, may all similarly dispute agency policy determinations, or may all similarly involve application, interpretation, or constitutionality of interrelated regulations or statutory provisions. There is no reason to distinguish among them in terms of the language or in terms of the purposes of § 405(h).

Illinois Council, 529 U.S. at 14.

The Supreme Court's description cuts a broad swath in terms of defining claims that can be said to "arise under" the Medicare Act. If a case, such as this one, presents claims that arise under the Medicare Act, they must be channeled through the administrative scheme provided for in the Medicare Act. It simply makes no difference whether those claims seek specific benefits or raise statutory and constitutional claims. Id.; see also Heckler v. Ringer, 466 U.S. at 614 (plaintiffs challenging Medicare rules regarding whether to pay for certain services, although alleging constitutional and administrative law violations, are "at bottom. . . inextricably intertwined" with claims for payment that must be "channeled first into the administrative process which Congress has provided for the determination of claims for benefits").[7]

The federal courts have rejected attempts similar to Plaintiff's that seek to circumvent the Medicare appeals process. See, e.g., Colorado Clinical Labs v. Newman, 1990 WL 282590 (N.D. Tex.) (Attachment G)(when plaintiff laboratories raised their dissatisfaction with methods

---

[7] This broad description of the claims that must first be channeled through the administrative review process similarly disposes of Plaintiff's "Constitutional" claim that its grant funds might be used to "subsidize" Medicare, Complaint ¶ 66, as well as Plaintiff's "Unlawful Reliance on Superseded Requirements" claim regarding a perceived conflict between the Secretary's regulations and an OMB Circular. Id. at 71. At bottom, the Complaint seeks to invalidate two of the Secretary's reasonable cost measures and seeks to gain for Plaintiff increased payment as a result. Accordingly, those claims, despite whatever other tangential issues Plaintiff believes might be involved, arise under the Medicare Act and must be properly presented to the Secretary in the first instance.

used to calculate their reimbursement through letters to CMS, court found that "plaintiffs' choice to seek the assistance of [CMS] rather than to pursue its claims through the administrative process established by Congress" was not an acceptable substitution for exhaustion of administrative remedies);  Cardiac Monitoring Srvs., Inc. v. Blue Cross Blue Shield, 807 F. Supp. 1422, 1427 (E.D. Ark. 1992)(when plaintiff had numerous discussions with CMS and wrote numerous letters in an effort to resolve a dispute challenging the methodology used to calculate the reasonable charge for services it had provided, court noted that there was an administrative process available for resolving disputes that arise under the Medicare statute and that the "letter writing campaign is not the type of administrative exhaustion envisioned by the Act.").  Plaintiff's choice to correspond with the PRRB and seek an "advisory opinion" regarding the Board's jurisdiction is not an acceptable substitute for submission of a cost report and exhaustion of administrative remedies as prescribed by the Medicare statute, regulations and judicial authority.[8]  Id.

---

[8] At this point, the only administrative decision that could be said to be before this Court is the April 20, 2007 decision of the PRRB finding the Board does not have jurisdiction to hear Plaintiff's "appeal."  Plaintiff asserts that it "does not challenge the Board's basic determination that it lacks jurisdiction" although Plaintiff vaguely goes on to hint that "other issues" regarding the determination "may conceivably become issues herein."  Complaint ¶ 4.

When the PRRB dismisses an appeal for lack of jurisdiction, a district court may review that decision.  The law is clear, however, that the scope of review is limited to the issue of whether the Board's jurisdictional dismissal was correct.  (And for all the reasons contained herein, the Secretary believes that it was.)  The district court should not, in the course of reviewing the Board's decision on jurisdiction, reach out and examine the merits of the claim.  See HCA Health Services, Inc. v Shalala, 27 F.3d 614, 615-17 (D.C. Cir. 1994); Western Medical Enter., Inc., v. Heckler, 783 F.2d 1376, 1381 (9th Cir. 1986); Saline Cmty. Hosp. v. Secretary of HHS, 744 F.2d 517, 520 (9th Cir. 1984).  Even though Plaintiff does not couch its claim as one seeking review of the Board's decision on jurisdiction, if the case is viewed that way the Court should affirm the decision of the PRRB and dismiss Plaintiff's Complaint for lack of jurisdiction, without need to address the merits of Plaintiff's claims.

Plaintiff has failed to bring this suit as prescribed in the Medicare statute. The only limited exception to the channeling requirement for all Medicare claims has no applicability here, and thus Plaintiff's claims should be dismissed.

## II.    Plaintiffs Have Failed to Allege Sufficient Facts Establishing Standing.

As an element of the fundamental "case or controversy" requirement of Article III, plaintiffs "must establish that they have standing to sue." McConnell v. FEC, 540 U.S. 93, 225 (2003). There are three core requirements that must be demonstrated to establish standing: (1) "injury in fact, which is concrete, distinct and palpable, and actual or imminent"; (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] some third party not before the court"; and (3) "a substantial likelihood that the requested relief will remedy the alleged injury in fact." McConnell, 540 U.S. at 225-26 (internal quotations and citations omitted). The burden is on the plaintiffs to establish their standing. Warth v. Seldin, 422 U.S. 490, 501 (1975).

In order to demonstrate an injury in fact, Plaintiff must prove that it has suffered an injury that is actual and imminent, as opposed to hypothetical or conjectural. Wensing v. Thompson, 423 F.3d 732, 743 (7th Cir. 2005). This requirement prevents the standing inquiry from devolving into "'an ingenious academic exercise in the conceivable.'" Warth, 422 U.S. at 509 (quoting United States v. SCRAP, 412 U.S. 669, 688 (1973)). Accordingly, an allegation of "possible" future injury does not demonstrate injury in fact; the injury must be "certainly impending" to satisfy the requirements of Article III. Whitmore v. Arkansas, 495 U.S. 149, 158 (1990).

-27-

Plaintiff alleges that the effect of the Secretary's reasonable cost regulations is to "cause a high percentage of the FQHCs," (Plaintiff stops short of asserting that it is one), "to lose money" (Plaintiff stops short of asserting how much).  Complaint ¶ 59.  Plaintiff does not demonstrate that either of the reasonable cost measures about which it complains – the per visit payment limit or the productivity screen – has ever been applied to any cost report filed by Plaintiff.  In fact, Plaintiff does not allege that it would be entitled to any increased payment whatsoever were this Court to invalidate the two reasonable cost requirements at issue.  Thus, it remains entirely speculative whether, at some unspecified point in the future, the Secretary's reasonable cost regulations will be applied to Plaintiff and whether it will experience any decrease in its Medicare reimbursement as a result.  See Smith v. Wis. Dep't of Agr., 23 F.3d 1134, 1142 (7th Cir. 1994) (holding that no justiciable case or controversy exists when plaintiff has yet to suffer loss); see also Impress Communications v. Unumprovident Corp., 335 F. Supp.2d 1053, 1060 (C.D. Cal. 2003) (holding that "anticipated denial of future benefits" due to improper health plan administration is "purely speculative").  Accordingly, because Plaintiff has failed to demonstrate any injury in fact traceable to the Secretary's challenged policies, Plaintiff's claims must be dismissed for lack of standing.

## **CONCLUSION**

For the reasons stated, the Secretary's motion to dismiss should be granted.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR,
United States Attorney
D.C. Bar No. 498610

-28-

_____/s/_____
MEGAN L. ROSE
Assistant United States Attorney
NC Bar No. 28639
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 514-7220/FAX: (202) 514-8780


ROBERT W. BALDERSTON
U.S. Department of Health and Human Services
Office of the General Counsel
330 Independence Ave., S.W.
Cohen Building, Room 5309
Washington, D.C. 20201
(202) 619-3601/FAX: (202) 401-1405

Counsel for the Secretary



**FELDESMAN
TUCKER
LEIFER
FIDELL** LLP

RECEIVED

OCT 13 2006

PROVIDER REIMBURSEMENT
REVIEW BOARD

October 10, 2006

**VIA FIRST CLASS MAIL**

Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, Maryland 21244-2670

> RE:    *Three Lower Counties Community Services, Inc.*
> Provider No. 21-1811 - **Request for Ruling on Jurisdiction
> Under 42 *U.S.C.* §1395oo(f)(1) and Expedited Judicial Review (EJR)
> Under 42 *C.F.R.* §405.1842**

To Whom It May Concern:

### Introduction

This filing is made on behalf of Three Lower Counties Community Services, Inc. ("TLCCS"), and all other Federally-qualified health centers ("FQHCs") participating in the Medicare Part B program, because they are situated similarly. By this filing, TLCCS seeks a ruling as to whether the Provider Reimbursement Review Board ("PRRB") has jurisdiction to entertain its challenges (described below) to two limits of a regulatory nature that have been imposed on FQHC Medicare reimbursement: (1) the FQHC cost cap, and (2) the physician productivity screen.[1] For the reasons set forth below, we do not believe the PRRB has jurisdiction over these challenges. In the event that the PRRB determines otherwise -- *i.e.*, that it

---

[1] The Medicare FQHC payment cap was published in the preamble to the Health Care Financing Administration's FQHC "final rules with comment period" in 1992. 57 *Fed. Reg.* 24961 (June 12, 1992). According to the preamble, the cap was to be only temporary pending sufficient FQHC cost experience. The 1992 rules were reissued in 1996 without any substantial changes. 61 *Fed. Reg.* 14640 (April 3, 1996). Medicare productivity screens are generally authorized by, but not defined in, formally promulgated regulations. 42 *C.F.R.* §§ 405.2468(c). When 42 *C.F.R.* 405.2468 was issued in 1992, the preamble to the rule noted that HCFA planned to use a productivity screen of 4,200 patient visits per full-time physician. 57 *Fed. Reg.* 24,961, 24,967 (June 12, 1992). The 4,200 physician screen figure as well as other provider screens do not appear in regulation, but are contained in CMS' Rural Health Clinic and Federally Qualified Health Center Manual, at § 503.

FELDESMAN TUCKER LEIFER FIDELL LLP

has such jurisdiction -- we ask the PRRB immediately to place the challenges on its appeal docket.

### Nature of TLCCS's Challenges

TLCCS' challenges to the Medicare FQHC payment cap and the productivity screen relate to the underlying support for these cost limits. It is TLCCS' view that the limits are and have been arbitrary, capricious and impermissible constraints on the activities of *all* FQHCS and, as such, fail to meet the standards imposed by the Administrative Procedure Act ("APA") for final agency action. As with any APA case over such action, TLCCS intends to make its argument based on the agency record and the requirements of applicable law.

Our understanding that the PRRB would have no jurisdiction to entertain such a challenge presumes that the PRRB would be unable to provide appropriate relief in the circumstances; namely, a finding that the limits are unlawful under APA standards, and an order that would enjoin their further use[2/] and require corrective action to the extent the limits have adversely affected Medicare payments to FQHCs.

### Efforts to Secure Response from Fiscal Intermediary

As reflected in the attached correspondence[3], in advance of our submission of this filing and initial submission of TLCCS' Medicare cost report for the fiscal year ending 5/31/06, we queried appropriate representatives of TLCCS' Medicare fiscal intermediary as to whether that organization possessed jurisdiction over the foregoing challenges. In response, we were informed that the intermediary would put that question to CMS and that it had done so.

Whether CMS would be the proper party to answer this question is doubtful, at best. In any event, CMS apparently failed to respond to the intermediary's request, a conclusion we draw from the fact that the intermediary has ceased communicating with us over the jurisdictional question. Suffice it to say that the intermediary never answered the jurisdictional question. We are accordingly left with no choice but to assume that the answer is obvious: that the intermediary lacks jurisdiction to set aside any CMS requirement, including the limits here at issue.

We stand ready to respond to any questions or requests for information the PRRB or its staff may have in regard to this filing.

---

[2/] Limits on reimbursement such as those at issue do not merely cause cost disallowances when they are exceeded. They also affect FQHC decisionmaking. For example, as specifically found by the Health Resources and Services Administration ("HRSA") (which oversees the Public Health Service Act grants FQHCs receive), FQHC compliance with the productivity screen (which had originally been imposed by HRSA) was leading to bad medicine. This finding caused HRSA to abandon the screen as a grant requirement.

[3] This correspondence also includes an authorization from TLCCS's Executive Director permitting our firm's representation of the health center in this matter.

FELDESMAN TUCKER LEIFER FIDELL LLP

Respectfully submitted,

FELDESMAN TUCKER LEIFER FIDELL LLP

By:    James L. Feldesman
       Kathy S. Ghiladi

Enclosures

cc:    UGS
       J. Robbins

**FTLF**

**FELDESMAN**
**TUCKER**
**LEIFER**
**FIDELL LLP**

July 25, 2006

**VIA FACSIMILE (804) 521-2360**
**AND FIRST CLASS MAIL**
Ms. Christal Brown
Provider Audit and Reimbursement
United Government Services, LLC
Suite 110
8002 Discovery Drive
Richmond, Virginia 23229-8601

   RE: Three Lower Counties Community Services, Inc., Provider No. 21-1811

Dear Ms. Brown:

   This firm represents Three Lower Counties Community Services, Inc.
("TLCCS"). In advance of TLCCS' submission of its Medicare cost report for the fiscal
year ending 5/31/06, we are writing to ask whether TLCCS may file an appeal with UGS
to set aside the Medicare per visit payment cap applicable to Federally-qualified health
centers ("FQHCs") because that cap is arbitrary and capricious.

   It is our understanding that UGS, as the intermediary for the Centers for Medicare
and Medicaid Services, does not have jurisdiction to entertain such an appeal because
UGS is legally bound under CMS rule to apply this cost-limiting device. However, we
are writing to you out of an abundance of caution to make sure that our understanding is
correct. Please advise if UGS does have the ability to consider such an appeal or kindly
provide us with information as to whom such an appeal should be directed.

   Finally, if you are not the right person within UGS to respond to this letter, I
would appreciate it if you would forward this letter to him or her. I would also like to
ask for an expedited response, if possible. A response could be sent to me by e-mail at
kghiladi@ftlf.com. Thank you.

       Sincerely,

       Feldesman Tucker Leifer Fidell LLP

   By: Kathy S. Ghiladi

Enclosure: Designation of Representation
cc: Joan G. Robbins, TLCCS

## AUTHORIZATION/DESIGNATION OF REPRESENTATION

Three Lower Counties Community Services, Inc. hereby designates
attorneys of the law firm Feldesman Tucker Leifer Fidell LLP (the "Firm") to
represent it in matters relating to its Medicare cost report, the Medicare FQHC per
visit payment cap, and provider productivity screens.

Joan G. Robbins
Executive Director
Three Lower Counties

**Greer, Amber**

| | |
|---|---|
| **From:** | Ghiladi, Kathy |
| **Sent:** | Friday, August 11, 2006 3:40 PM |
| **To:** | Feldesman, Jim |
| **Subject:** | FW: Three Lower Counties Community Services, Inc. |

Jim, So far there is nothing in writing from UGS to CMS.   -- Kathy

Kathy S. Ghiladi, Esq.
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., 2nd Floor
Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm Feldesman Tucker
Leifer Fidell LLP and is/are intended solely for the use of the named recipient(s).  This
e-mail may contain privileged attorney/client communications and/or work product.  Any
dissemination by anyone other than an intended recipient is prohibited.  If you are not a
named recipient, you are prohibited from any further viewing of the email and/or any
attachment(s) or from making any use of the e-mail and/or attachment(s).  If you have
received this e-mail in error, notify the sender immediately and delete the e-mail, any
attachments, and all copies from any drives or storage media and destroy any printouts.

IRS Circular 230 Disclosure:  Under U.S. Treasury regulations, we are required to inform
you that any tax advice contained in this e-mail or any attachment hereto is not intended
to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue
Code.

-----Original Message-----
From: Boyd, Mary Ann [mailto:MaryAnn.Boyd@ugswlp.com]
Sent: Friday, August 11, 2006 3:37 PM
To: Ghiladi, Kathy
Subject: RE: Three Lower Counties Community Services, Inc.

So far it's just a question to my contact at CMS about the process. I will copy you by
mail if he asks me to forward your letter to his office.  He may refer me to someone else.
Will keep you posted and have a great vacation! Mary Ann

-----Original Message-----
From: Ghiladi, Kathy [mailto:KGhiladi@feldesmantucker.com]
Sent: Friday, August 11, 2006 3:28 PM
To: Boyd, Mary Ann
Subject: RE: Three Lower Counties Community Services, Inc.


Would it be possible to receive a copy of the referral to CMS?  I am out on vacation next
week, but it could be directed to my senior partner, Jim Feldesman, either at the address
below or by e-mail to jfeldesman@ftlf.com.  Thank you. -- Kathy

Kathy S. Ghiladi, Esq.
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., 2nd Floor
Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm Feldesman Tucker
Leifer Fidell LLP and is/are intended solely for the use of the named recipient(s).  This
e-mail may contain privileged attorney/client communications and/or work product.  Any
dissemination by anyone other than an intended recipient is prohibited.  If you are not a

named recipient, you are pro   ited from any further viewing    the email and/or any
attachment(s) or from making any use of the e-mail and/or attachment(s). If you have
received this e-mail in error, notify the sender immediately and delete the e-mail, any
attachments, and all copies from any drives or storage media and destroy any printouts.

IRS Circular 230 Disclosure:  Under U.S. Treasury regulations, we are required to inform
you that any tax advice contained in this e-mail or any attachment hereto is not intended
to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue
Code.

-----Original Message-----
From: Boyd, Mary Ann [mailto:MaryAnn.Boyd@ugswlp.com]
Sent: Friday, August 11, 2006 2:23 PM
To: Ghiladi, Kathy
Subject: Three Lower Counties Community Services, Inc.

Dear Ms. Ghiladi,
In response to your letter dated July 25, 2006 to Christal Brown, I have forwarded your
question regarding an appeal to the FQHC maximum payment limits to CMS.  I will let you
know as soon as I hear back from them.

Also, you may be interested to know that the county designation (Somerset and Wicomico)
for this provider changed from rural to urban effective October 1, 2004.  The applicable
rates for 2005 and 2006 are $109.88 and $112.96 respectively.

Sincerely,
Mary Ann Boyd
Senior Auditor
United Government Services, LLC
Richmond, VA
(804) 521-2304
maryann.boyd@ugswlp.com

The information contained in this electronic message may be confidential, is intended for
the use of the recipient(s) named above, and may be legally privileged.  If you are not
the intended recipient of this communication, you are hereby notified that any use,
distribution or copying of this message is strictly prohibited.  If you have received this
communication in error, please immediately return it to the sender and delete the original
message and any copy of it from your computer system.  If you have any questions
concerning this message, please contact the sender.  Thank you.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole
use of the intended recipient(s) and may contain confidential and privileged information
or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is
prohibited. If you are not the intended recipient, please contact the sender by reply e-
mail and destroy all copies of the original message.


CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole
use of the intended recipient(s) and may contain confidential and privileged information
or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is
prohibited. If you are not the intended recipient, please contact the sender by reply e-
mail and destroy all copies of the original message.

**Ghiladi, Kathy**

| | |
|---|---|
| **From:** | Boyd, Mary Ann [MaryAnn.Boyd@ugswlp.com] |
| **Sent:** | Friday, August 11, 2006 2:42 PM |
| **To:** | Ghiladi, Kathy |
| **Subject:** | RE: Three Lower Counties Community Services, Inc. |

Kathy,
We as intermediary have authority to address possible exceptions to the productivity
standards on a annual cost reporting period basis. Pub 100-4, Chapter 9, Section 40.3 may
provide you with more information.

Mary Ann

-----Original Message-----
From: Ghiladi, Kathy [mailto:KGhiladi@feldesmantucker.com]
Sent: Friday, August 11, 2006 2:27 PM
To: Boyd, Mary Ann
Subject: RE: Three Lower Counties Community Services, Inc.


Thank you for getting back to me. Could you also advise as to or find out about the appeal
process applicable to the Medicare provider productivity screens (4200 for physicians and
2100 for others)?  I realize that I should have included that issue in my letter as well.


Again, thanks for letting me know of the status of our request.  I appreciate it.  --
Kathy

Kathy S. Ghiladi, Esq.
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., 2nd Floor
Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm Feldesman Tucker
Leifer Fidell LLP and is/are intended solely for the use of the named recipient(s).  This
e-mail may contain privileged attorney/client communications and/or work product.  Any
dissemination by anyone other than an intended recipient is prohibited.  If you are not a
named recipient, you are prohibited from any further viewing of the email and/or any
attachment(s) or from making any use of the e-mail and/or attachment(s).  If you have
received this e-mail in error, notify the sender immediately and delete the e-mail, any
attachments, and all copies from any drives or storage media and destroy any printouts.

IRS Circular 230 Disclosure:  Under U.S. Treasury regulations, we are required to inform
you that any tax advice contained in this e-mail or any attachment hereto is not intended
to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue
Code.

-----Original Message-----
From: Boyd, Mary Ann [mailto:MaryAnn.Boyd@ugswlp.com]
Sent: Friday, August 11, 2006 2:23 PM
To: Ghiladi, Kathy
Subject: Three Lower Counties Community Services, Inc.

Dear Ms. Ghiladi,
In response to your letter dated July 25, 2006 to Christal Brown, I have forwarded your
question regarding an appeal to the FQHC maximum payment limits to CMS.  I will let you
know as soon as I hear back from them.

Also, you may be interested to know that the county designation (Somerset and Wicomico)
for this provider changed from rural to urban effective October 1, 2004.  The applicable

1

rates for 2005 and 2006 are $109.88 and $112.96 respectively.

Sincerely,
Mary Ann Boyd
Senior Auditor
United Government Services, LLC
Richmond, VA
(804) 521-2304
maryann.boyd@ugswlp.com

The information contained in this electronic message may be confidential, is intended for
the use of the recipient(s) named above, and may be legally privileged.  If you are not
the intended recipient of this communication, you are hereby notified that any use,
distribution or copying of this message is strictly prohibited.  If you have received this
communication in error, please immediately return it to the sender and delete the original
message and any copy of it from your computer system.  If you have any questions
concerning this message, please contact the sender.  Thank you.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole
use of the intended recipient(s) and may contain confidential and privileged information
or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is
prohibited. If you are not the intended recipient, please contact the sender by reply e-
mail and destroy all copies of the original message.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole
use of the intended recipient(s) and may contain confidential and privileged information
or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is
prohibited. If you are not the intended recipient, please contact the sender by reply e-
mail and destroy all copies of the original message.

Ghiladi, Kathy

| | |
|---|---|
| **From:** | Boyd, Mary Ann [MaryAnn.Boyd@ugswlp.com] |
| **Sent:** | Tuesday, August 15, 2006 3:10 PM |
| **To:** | Greer, Amber; Ghiladi, Kathy |
| **Cc:** | Cox, Tom |
| **Subject:** | Three Lower Counties Community Services, Inc. |

Jim,

I am not completely clear on what you are asking when you say "legal right of CMS to impose either the per visit cap or the productivity screen." I have given you a publication reference for the productivity standard rule and you are probably aware that the maximum payment limit provision is found in Section 1833(f) of the Social Security Act.

Referring back to Kathy's original letter, an appeal of either of these issues should be directed to our office within 180 days of the issuance of a Notice of Program Reimbursement for the cost reporting period in question. Such a determination is necessary to initiate the appeal process. Further instructions will be enclosed with that notice and are detailed in CFR 405.1809-405.1890 and CMS Pub 15-1, Chap. 29.

If you have further questions, please feel free to call me.

Mary Ann Boyd
Senior Auditor
United Government Services, LLC
Richmond, VA
(804) 521-2304
maryann.boyd@ugswlp.com

The information contained in this electronic message may be confidential, is intended for the use of the recipient(s) named above, and may be legally privileged. If you are not the intended recipient of this communication, you are hereby notified that any use, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please immediately return it to the sender and delete the original message and any copy of it from your computer system. If you have any questions concerning this message, please contact the sender. Thank you.

-----Original Message-----
**From:** Greer, Amber [mailto:AGreer@feldesmantucker.com]
**Sent:** Monday, August 14, 2006 1:05 PM
**To:** Boyd, Mary Ann
**Cc:** Ghiladi, Kathy
**Subject:**

MaryAnn --

I don't know whether Kathy told you that she would be on vacation this week and that I would be taking her place in regard to Three Lower Counties Community Services, Inc. ("TLC"). As Kathy's pinch hitter, I want to respond to your August 11 email indicating that you, as intermediary, have authority to grant exceptions to the so-called productivity standards or screen. We were aware of that authority and, without waiving TLC's future right to ask for it to be exercised, wanted you to be clear that the legal challenge we wish to make is addressed to the legal right of HHS/CMS to impose either the per visit cap or the productivity screen.

Before Kathy left for vacation I had asked her to ask you to let us know to whom in that vast federal

10/10/2006

bureaucracy known as CMS you sent the inquiry regarding TLC's ability to seek an administrative determination (as opposed to legal action in court) that the cap and screen are unlawful exercises of authority. If Kathy did not ask you, let me ask you now, and if she did, pardon me for asking twice. In any event, we would appreciate knowing the federal official and/or office that received the inquiry.

Jim

PS     We also would appreciate a copy of the inquiry.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

10/10/2006



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
**Phone: 410-786-2671**                    **FAX: 410-786-5298**

Suzanne Cochran, Esq., Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West
Yvette C. Hayes

Refer to:

NOV 0 9 2006

Kathy S. Ghiladi, Esq.
Feldesman, Tucker, Leifer, Fidell, LLP
2001 L Street, NW
Second Floor
Washington, D.C. 20036-4910

                    RE: Three Lower Counties Community Services, Inc.
                        Provider No. 21-1811

Dear Ms. Ghiladi:

The Provider Reimbursement Review Board (Board) has reviewed your October 10, 2006
letter seeking an advisory opinion on whether the Board has jurisdiction over the
Federally-qualified health centers cost cap and the physician productivity screen. This
letter is to advise you that the Board does not furnish advisory opinions on jurisdiction.
The only jurisdictional rulings issued by the Board involve cases pending before it.

If you have any questions regarding this matter, please contact Melanie Marolf-Fetchik,
Esq. from our staff by telephoning (410) 786-5599.

                    Sincerely,

                    Suzanne Cochran, Esq.
                    Chairman



**FELDESMAN**
**TUCKER**
**LEIFER**
**FIDELL** LLP

RECEIVED

DEC 2 6 2006

PROVIDER REIMBURSEMENT
REVIEW BOARD

KATHY S. GHILADI
kghiladi@ftlf.com

December 21, 2006

**VIA FACSIMILE (410) 786-5298**
**AND FIRST CLASS MAIL**

Melanie Marolf-Fetchik, Esq.
Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD. 21244-2670

     Re:    Three Lower Counties Community Services, Inc.; Provider No. 21-1811

Dear Ms. Marolf-Fetchik:

    I am writing in reference to a November 9, 2006 from Ms. Suzanne Cochran in which she said that we could contact you if we had any questions about her letter. That letter is attached for your convenience (Attachment A).

    In her letter, Ms. Cochran advises that the PRRB does not furnish advisory opinions and that the only jurisdictional rulings issued by the Board "involves cases pending before it." Attachment A. We assume that the notice of appeal dated October 10, 2006 that we submitted to the PRRB (Attachment B) is being treated as other than a case pending before the PRRB is because the issues we were raising were not being raised in connection with a specific cost report. However, our very purpose in seeking a clarification on jurisdiction is to ascertain whether the PRRB has jurisdiction when a provider is seeking to challenge a regulation or cost limit on its face. As we explained in our October 10, 2006 letter (Attachment B at 2) the Medicare cap and the physician productivity screen are limits that result in a provider altering its conduct. These limits have affected the health center in the past and their very presence has an inhibiting effect on the actions of the health center. As a result of Ms. Cochran's letter to us, we presume than the PRRB has no administrative process to challenge these cost limits on their face. Please let us know if our presumption is correct. If our client proceeds to court, we would like to know that the position of the PRRB is that it has no jurisdiction with respect to such a challenge.

FELDESMAN TUCKER LEIFER FIDELL LLP

Melanie Marolf-Fetchik, Esq.
December 21, 2006
Page 2

      Thank you for your consideration.  If it is more expedient for you, please feel free to respond by e-mail to the address above.

              Sincerely,

              FELDESMAN TUCKER LEIFER
              FIDELL LLP

By: _____
          Kathy S. Ghiladi

Enclosures:
  (Attachments A and B)

**RECEIVED**

DEC 2 6 2006

PROVIDER REIMBURSEMENT
REVIEW BOARD



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
**Baltimore MD 21244-2670**
**Phone: 410-786-2671**          **FAX: 410-786-5298**

Suzanne Cochran, Esq., Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West
Yvette C. Hayes

Refer to:

**RECEIVED**          NOV 0 9 2006

DEC 2 6 2006

PROVIDER REIMBURSEMENT
REVIEW BOARD

Kathy S. Ghiladi, Esq.
Feldesman, Tucker, Leifer, Fidell, LLP
2001 L Street, NW
Second Floor
Washington, D.C. 20036-4910

RE: Three Lower Counties Community Services, Inc.
    Provider No. 21-1811

Dear Ms. Ghiladi:

The Provider Reimbursement Review Board (Board) has reviewed your October 10, 2006
letter seeking an advisory opinion on whether the Board has jurisdiction over the
Federally-qualified health centers cost cap and the physician productivity screen. This
letter is to advise you that the Board does not furnish advisory opinions on jurisdiction.
The only jurisdictional rulings issued by the Board involve cases pending before it.

If you have any questions regarding this matter, please contact Melanie Marolf-Fetchik,
Esq. from our staff by telephoning (410) 786-5599.

Sincerely,

Suzanne Cochran, Esq.
Chairman

Attachment
A

F T
L F

ELDESMAN
TUCKER
LEIFER
FIDELL LLP

**RECEIVED**

Attachment
B

DEC 2 6 2006

PROVIDER REIMBURSEMENT
REVIEW BOARD

October 10, 2006

**VIA FIRST CLASS MAIL**

Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, Maryland 21244-2670

> RE:    *Three Lower Counties Community Services, Inc.*
> Provider No. 21-1811 - **Request for Ruling on Jurisdiction
> Under 42 *U.S.C.* §1395oo(f)(1) and Expedited Judicial Review (EJR)
> Under 42 *C.F.R.* §405.1842**

To Whom It May Concern:

### Introduction

This filing is made on behalf of Three Lower Counties Community Services, Inc. ("TLCCS"), and all other Federally-qualified health centers ("FQHCs") participating in the Medicare Part B program, because they are situated similarly. By this filing, TLCCS seeks a ruling as to whether the Provider Reimbursement Review Board ("PRRB") has jurisdiction to entertain its challenges (described below) to two limits of a regulatory nature that have been imposed on FQHC Medicare reimbursement: (1) the FQHC cost cap, and (2) the physician productivity screen.[1] For the reasons set forth below, we do not believe the PRRB has jurisdiction over these challenges. In the event that the PRRB determines otherwise -- *i.e.*, that it

---

[1] The Medicare FQHC payment cap was published in the preamble to the Health Care Financing Administration's FQHC "final rules with comment period" in 1992. 57 *Fed. Reg.* 24961 (June 12, 1992). According to the preamble, the cap was to be only temporary pending sufficient FQHC cost experience. The 1992 rules were reissued in 1996 without any substantial changes. 61 *Fed. Reg.* 14640 (April 3, 1996). Medicare productivity screens are generally authorized by, but not defined in, formally promulgated regulations. 42 *C.F.R.* §§ 405.2468(c). When 42 *C.F.R.* 405.2468 was issued in 1992, the preamble to the rule noted that HCFA planned to use a productivity screen of 4,200 patient visits per full-time physician. 57 *Fed. Reg.* 24,961, 24,967 (June 12, 1992). The 4,200 physician screen figure as well as other provider screens do not appear in regulation, but are contained in CMS' Rural Health Clinic and Federally Qualified Health Center Manual, at § 503.

FELDESMAN TUCKER LEIFER FIDELL LLP

has such jurisdiction -- we ask the PRRB immediately to place the challenges on its appeal docket.

## Nature of TLCCS's Challenges

TLCCS' challenges to the Medicare FQHC payment cap and the productivity screen relate to the underlying support for these cost limits. It is TLCCS' view that the limits are and have been arbitrary, capricious and impermissible constraints on the activities of *all* FQHCS and, as such, fail to meet the standards imposed by the Administrative Procedure Act ("APA") for final agency action. As with any APA case over such action, TLCCS intends to make its argument based on the agency record and the requirements of applicable law.

Our understanding that the PRRB would have no jurisdiction to entertain such a challenge presumes that the PRRB would be unable to provide appropriate relief in the circumstances; namely, a finding that the limits are unlawful under APA standards, and an order that would enjoin their further use[2] and require corrective action to the extent the limits have adversely affected Medicare payments to FQHCs.

## Efforts to Secure Response from Fiscal Intermediary

As reflected in the attached correspondence[3], in advance of our submission of this filing and initial submission of TLCCS' Medicare cost report for the fiscal year ending 5/31/06, we queried appropriate representatives of TLCCS' Medicare fiscal intermediary as to whether that organization possessed jurisdiction over the foregoing challenges. In response, we were informed that the intermediary would put that question to CMS and that it had done so.

Whether CMS would be the proper party to answer this question is doubtful, at best. In any event, CMS apparently failed to respond to the intermediary's request, a conclusion we draw from the fact that the intermediary has ceased communicating with us over the jurisdictional question. Suffice it to say that the intermediary never answered the jurisdictional question. We are accordingly left with no choice but to assume that the answer is obvious: that the intermediary lacks jurisdiction to set aside any CMS requirement, including the limits here at issue.

We stand ready to respond to any questions or requests for information the PRRB or its staff may have in regard to this filing,

---

[2] Limits on reimbursement such as those at issue do not merely cause cost disallowances when they are exceeded. They also affect FQHC decisionmaking. For example, as specifically found by the Health Resources and Services Administration ("HRSA") (which oversees the Public Health Service Act grants FQHCs receive), FQHC compliance with the productivity screen (which had originally been imposed by HRSA) was leading to bad medicine. This finding caused HRSA to abandon the screen as a grant requirement.

[3] This correspondence also includes an authorization from TLCCS's Executive Director permitting our firm's representation of the health center in this matter.

FELDESMAN TUCKER LEIFER FIDELL LLP

Respectfully submitted,

FELDESMAN TUCKER LEIFER FIDELL LLP

By:     James L. Feldesman
        Kathy S. Ghiladi

Enclosures

cc:     UGS
        J. Robbins

**ELDESMAN**
**UCKER**
**EIFER**
**IDELL LLP**

July 25, 2006

**VIA FACSIMILE (804) 521-2360**
**AND FIRST CLASS MAIL**
Ms. Christal Brown
Provider Audit and Reimbursement
United Government Services, LLC
Suite 110
8002 Discovery Drive
Richmond, Virginia 23229-8601

**RECEIVED**

DEC 2 6 2006

PROVIDER REIMBURSEMENT
REVIEW BOARD

RE:     Three Lower Counties Community Services, Inc., Provider No. 21-1811

Dear Ms. Brown:

This firm represents Three Lower Counties Community Services, Inc. ("TLCCS"). In advance of TLCCS' submission of its Medicare cost report for the fiscal year ending 5/31/06, we are writing to ask whether TLCCS may file an appeal with UGS to set aside the Medicare per visit payment cap applicable to Federally-qualified health centers ("FQHCs") because that cap is arbitrary and capricious.

It is our understanding that UGS, as the intermediary for the Centers for Medicare and Medicaid Services, does not have jurisdiction to entertain such an appeal because UGS is legally bound under CMS rule to apply this cost-limiting device. However, we are writing to you out of an abundance of caution to make sure that our understanding is correct. Please advise if UGS does have the ability to consider such an appeal or kindly provide us with information as to whom such an appeal should be directed.

Finally, if you are not the right person within UGS to respond to this letter, I would appreciate it if you would forward this letter to him or her. I would also like to ask for an expedited response, if possible. A response could be sent to me by e-mail at kghiladi@ftlf.com. Thank you.

Sincerely,

Feldesman Tucker Leifer Fidell LLP

By:     Kathy S. Ghiladi

Enclosure: Designation of Representation
cc:      Joan G. Robbins, TLCCS

## AUTHORIZATION/DESIGNATION OF REPRESENTATION

Three Lower Counties Community Services, Inc. hereby designates attorneys of the law firm Feldesman Tucker Leifer Fidell LLP (the "Firm") to represent it in matters relating to its Medicare cost report, the Medicare FQHC per visit payment cap, and provider productivity screens.

Joan G. Robbins
Executive Director
Three Lower Counties

**Greer, Amber**

| | |
|---|---|
| **From:** | Ghiladi, Kathy |
| **Sent:** | Friday, August 11, 2006 3:40 PM |
| **To:** | Feldesman, Jim |
| **Subject:** | FW: Three Lower Counties Community Services, Inc. |

**RECEIVED**

**DEC 2 6 2006**

**PROVIDER REIMBURSEMENT
REVIEW BOARD**

Jim, So far there is nothing in writing from UGS to CMS.  -- Kathy

Kathy S. Ghiladi, Esq.
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., 2nd Floor
Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm Feldesman Tucker
Leifer Fidell LLP and is/are intended solely for the use of the named recipient(s).  This
e-mail may contain privileged attorney/client communications and/or work product.  Any
dissemination by anyone other than an intended recipient is prohibited.  If you are not a
named recipient, you are prohibited from any further viewing of the email and/or any
attachment(s) or from making any use of the e-mail and/or attachment(s).  If you have
received this e-mail in error, notify the sender immediately and delete the e-mail, any
attachments, and all copies from any drives or storage media and destroy any printouts.

IRS Circular 230 Disclosure:  Under U.S. Treasury regulations, we are required to inform
you that any tax advice contained in this e-mail or any attachment hereto is not intended
to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue
Code.

-----Original Message-----
From: Boyd, Mary Ann [mailto:MaryAnn.Boyd@ugswlp.com]
Sent: Friday, August 11, 2006 3:37 PM
To: Ghiladi, Kathy
Subject: RE: Three Lower Counties Community Services, Inc.

So far it's just a question to my contact at CMS about the process. I will copy you by
mail if he asks me to forward your letter to his office.  He may refer me to someone else.
Will keep you posted and have a great vacation! Mary Ann

-----Original Message-----
From: Ghiladi, Kathy [mailto:KGhiladi@feldesmantucker.com]
Sent: Friday, August 11, 2006 3:28 PM
To: Boyd, Mary Ann
Subject: RE: Three Lower Counties Community Services, Inc.


Would it be possible to receive a copy of the referral to CMS?  I am out on vacation next
week, but it could be directed to my senior partner, Jim Feldesman, either at the address
below or by e-mail to jfeldesman@ftlf.com.  Thank you. -- Kathy

Kathy S. Ghiladi, Esq.
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., 2nd Floor
Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm Feldesman Tucker
Leifer Fidell LLP and is/are intended solely for the use of the named recipient(s).  This
e-mail may contain privileged attorney/client communications and/or work product.  Any
dissemination by anyone other than an intended recipient is prohibited.  If you are not a

named recipient, you are prc    bited from any further viewing    the email and/or any
attachment(s) or from making any use of the e-mail and/or attachment(s).  If you have
received this e-mail in error, notify the sender immediately and delete the e-mail, any
attachments, and all copies from any drives or storage media and destroy any printouts.

IRS Circular 230 Disclosure:  Under U.S. Treasury regulations, we are required to inform
you that any tax advice contained in this e-mail or any attachment hereto is not intended
to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue
Code.

-----Original Message-----
From: Boyd, Mary Ann [mailto:MaryAnn.Boyd@ugswlp.com]
Sent: Friday, August 11, 2006 2:23 PM
To: Ghiladi, Kathy
Subject: Three Lower Counties Community Services, Inc.

Dear Ms. Ghiladi,
In response to your letter dated July 25, 2006 to Christal Brown, I have forwarded your
question regarding an appeal to the FQHC maximum payment limits to CMS.  I will let you
know as soon as I hear back from them.

Also, you may be interested to know that the county designation (Somerset and Wicomico)
for this provider changed from rural to urban effective October 1, 2004.  The applicable
rates for 2005 and 2006 are $109.88 and $112.96 respectively.

Sincerely,
Mary Ann Boyd
Senior Auditor
United Government Services, LLC
Richmond, VA
(804) 521-2304
maryann.boyd@ugswlp.com

The information contained in this electronic message may be confidential, is intended for
the use of the recipient(s) named above, and may be legally privileged.  If you are not
the intended recipient of this communication, you are hereby notified that any use,
distribution or copying of this message is strictly prohibited.  If you have received this
communication in error, please immediately return it to the sender and delete the original
message and any copy of it from your computer system.  If you have any questions
concerning this message, please contact the sender.  Thank you.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole
use of the intended recipient(s) and may contain confidential and privileged information
or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is
prohibited. If you are not the intended recipient, please contact the sender by reply e-
mail and destroy all copies of the original message.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole
use of the intended recipient(s) and may contain confidential and privileged information
or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is
prohibited. If you are not the intended recipient, please contact the sender by reply e-
mail and destroy all copies of the original message.

**Ghiladi, Kathy**

| | |
|---|---|
| **From:** | Boyd, Mary Ann [MaryAnn.Boyd@ugswlp.com] |
| **Sent:** | Friday, August 11, 2006 2:42 PM |
| **To:** | Ghiladi, Kathy |
| **Subject:** | RE: Three Lower Counties Community Services, Inc. |

Kathy,
We as intermediary have authority to address possible exceptions to the productivity
standards on a annual cost reporting period basis. Pub 100-4, Chapter 9, Section 40.3 may
provide you with more information.

Mary Ann

-----Original Message-----
From: Ghiladi, Kathy [mailto:KGhiladi@feldesmantucker.com]
Sent: Friday, August 11, 2006 2:27 PM
To: Boyd, Mary Ann
Subject: RE: Three Lower Counties Community Services, Inc.


Thank you for getting back to me. Could you also advise as to or find out about the appeal
process applicable to the Medicare provider productivity screens (4200 for physicians and
2100 for others)?  I realize that I should have included that issue in my letter as well.


Again, thanks for letting me know of the status of our request.  I appreciate it.  --
Kathy

Kathy S. Ghiladi, Esq.
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., 2nd Floor
Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm Feldesman Tucker
Leifer Fidell LLP and is/are intended solely for the use of the named recipient(s).  This
e-mail may contain privileged attorney/client communications and/or work product.  Any
dissemination by anyone other than an intended recipient is prohibited.  If you are not a
named recipient, you are prohibited from any further viewing of the email and/or any
attachment(s) or from making any use of the e-mail and/or attachment(s).  If you have
received this e-mail in error, notify the sender immediately and delete the e-mail, any
attachments, and all copies from any drives or storage media and destroy any printouts.

IRS Circular 230 Disclosure:  Under U.S. Treasury regulations, we are required to inform
you that any tax advice contained in this e-mail or any attachment hereto is not intended
to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue
Code.

-----Original Message-----
From: Boyd, Mary Ann [mailto:MaryAnn.Boyd@ugswlp.com]
Sent: Friday, August 11, 2006 2:23 PM
To: Ghiladi, Kathy
Subject: Three Lower Counties Community Services, Inc.

Dear Ms. Ghiladi,
In response to your letter dated July 25, 2006 to Christal Brown, I have forwarded your
question regarding an appeal to the FQHC maximum payment limits to CMS.  I will let you
know as soon as I hear back from them.

Also, you may be interested to know that the county designation (Somerset and Wicomico)
for this provider changed from rural to urban effective October 1, 2004.  The applicable

1

rates for 2005 and 2006 are $109.88 and $112.96 respectively.

Sincerely,
Mary Ann Boyd
Senior Auditor
United Government Services, LLC
Richmond, VA
(804) 521-2304
maryann.boyd@ugswlp.com

The information contained in this electronic message may be confidential, is intended for the use of the recipient(s) named above, and may be legally privileged.  If you are not the intended recipient of this communication, you are hereby notified that any use, distribution or copying of this message is strictly prohibited.  If you have received this communication in error, please immediately return it to the sender and delete the original message and any copy of it from your computer system.  If you have any questions concerning this message, please contact the sender.  Thank you.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**Ghiladi, Kathy**

| | |
|---|---|
| **From:** | Boyd, Mary Ann [MaryAnn.Boyd@ugswlp.com] |
| **Sent:** | Tuesday, August 15, 2006 3:10 PM |
| **To:** | Greer, Amber; Ghiladi, Kathy |
| **Cc:** | Cox, Tom |
| **Subject:** | Three Lower Counties Community Services, Inc. |

RECEIVED

DEC 2 6 2006

PROVIDER REIMBURSEMENT
REVIEW BOARD

Jim,
I am not completely clear on what you are asking when you say "legal right of CMS to impose either the per visit cap or the productivity screen." I have given you a publication reference for the productivity standard rule and you are probably aware that the maximum payment limit provision is found in Section 1833(f) of the Social Security Act.

Referring back to Kathy's original letter, an appeal of either of these issues should be directed to our office within 180 days of the issuance of a Notice of Program Reimbursement for the cost reporting period in question. Such a determination is necessary to initiate the appeal process. Further instructions will be enclosed with that notice and are detailed in CFR 405.1809-405.1890 and CMS Pub 15-1, Chap. 29.

If you have further questions, please feel free to call me.

Mary Ann Boyd
Senior Auditor
United Government Services, LLC
Richmond, VA
(804) 521-2304
maryann.boyd@ugswlp.com

The information contained in this electronic message may be confidential, is intended for the use of the recipient(s) named above, and may be legally privileged. If you are not the intended recipient of this communication, you are hereby notified that any use, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please immediately return it to the sender and delete the original message and any copy of it from your computer system. If you have any questions concerning this message, please contact the sender. Thank you.

-----Original Message-----
**From:** Greer, Amber [mailto:AGreer@feldesmantucker.com]
**Sent:** Monday, August 14, 2006 1:05 PM
**To:** Boyd, Mary Ann
**Cc:** Ghiladi, Kathy
**Subject:**

MaryAnn --

I don't know whether Kathy told you that she would be on vacation this week and that I would be taking her place in regard to Three Lower Counties Community Services, Inc. ("TLC"). As Kathy's pinch hitter, I want to respond to your August 11 email indicating that you, as intermediary, have authority to grant exceptions to the so-called productivity standards or screen. We were aware of that authority and, without waiving TLC's future right to ask for it to be exercised, wanted you to be clear that the legal challenge we wish to make is addressed to the legal right of HHS/CMS to impose either the per visit cap or the productivity screen.

Before Kathy left for vacation I had asked her to ask you to let us know to whom in that vast federal

bureaucracy known as CMS you sent the inquiry regarding TLC's ability to seek an administrative determination (as opposed to legal action in court) that the cap and screen are unlawful exercises of authority. If Kathy did not ask you, let me ask you now, and if she did, pardon me for asking twice. In any event, we would appreciate knowing the federal official and/or office that received the inquiry.

Jim
PS      We also would appreciate a copy of the inquiry.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

10/10/2006



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671                         FAX: 410-786-5298

Suzanne Cochran, Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West
Yvette C. Hayes

<u>**CERTIFIED MAIL**</u>

JAN 0 4 2007

Feldesman, Tucker, Leifer, Fidell, LLP
Kathy S. Ghiladi
2001 L. Street
Second Floor
Washington, DC 20036 4910

RE:  Acknowledgement and Critical Due Dates
     Case Number: 07-0538
     Date Filed: 10/10/2006
     Provider Name: Three Lower Counties Community Services, Inc.
     Provider Number: 21-1811
     Appealed Year – FYE:

The Provider Reimbursement Review Board ("Board") has received your request for a hearing.  You will need to obtain a copy of the Board's instructions which are located on the Board's web site at http://www.cms.hhs.gov/PRRBReview/02_PRRB_Instructions.asp.  If internet access is not available to you, you may call the Board at (410) 786-2671 and request that a copy be mailed to you.

You must reference the case number and provider information on all correspondence with the Board. If any of the above information is incorrect, you must inform the Board, in writing, within 30 days of this letter.

<u>DUE DATES</u>

Certified Article Number
7160 3901 9849 5942 7389
SENDERS RECORD

Certified Article Number
7160 3901 9849 5942 7372
SENDERS RECORD

**1st of September 2007**
Provider's Preliminary Position Papers due to Intermediary (with letter to the Board certifying that preliminary position paper due date has been met and copy of the first page only of the preliminary position paper).

**1st of November 2007**
Intermediary's Preliminary Position Papers due to Provider (with letter to the Board certifying that preliminary position paper due date has been met and copy of the first page only of the preliminary position paper).

**1st of January 2008**
Final position papers due to the Board from both Parties.

Page 2

DISMISSALS

You are responsible for pursuing your appeal in accordance with the Board's procedures, which are outlined in the Board's Instructions. You must file your position papers, regardless of any outstanding jurisdictional challenges, motions or subpoena requests. If you miss any of your due dates including meeting either position paper due date, the Board will dismiss your appeal. The Board will not send a due date reminder. If the Intermediary fails to meet its deadlines, the Board will contact the Centers for Medicare and Medicaid Services (CMS) about contract compliance and will schedule a hearing date.

TENTATIVE HEARING DATE

**May 2008:** Tentative month and year of hearing.

The Board will send you a Notice of Board Hearing to notify you of the specific time, date and location of the hearing. The Notice of Hearing will be issued at least 30 days prior to the actual hearing date.

OPTIONS

You may make a written request, at any time, that:
        Your month of hearing be rescheduled to an earlier month;
        Your case be heard based on the submitted record;
        Your case be conducted by video or teleconference;
        Your case be resolved through alternative dispute resolution/mediation;
        Your case be reviewed in a pre-hearing conference with a Board member.

If you request any of these options, you must continue to meet with the due dates set forth in this letter until you are advised regarding your request by the Board.

Steven R. Kirsh, Director
Division of Jurisdiction & Case Management

cc:   United Government Services, LLC - WI
      Linda J. Swiderski
      Senior Auditor
      6775 West Washington Street
      Milwaukee, WI 53214

      Wilson C. Leong
      BC & BS Association
      225 North Michigan Avenue
      Chicago, IL  60601-7680



**FELDESMAN
TUCKER
LEIFER
FIDELL** LLP

RECEIVED

JAN 18 2007

PROVIDER REIMBURSEMENT
REVIEW BOARD

KATHY S. GHILADI
kghiladi@ftlf.com

January 16, 2007

## VIA FACSIMILE (410) 786-5298
## AND FIRST CLASS MAIL

Steven R. Kirsh, Director
Division of Jurisdiction and Case Management
Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD. 21244-2670

07-0538

      Re:    Three Lower Counties Community Services, Inc.; Provider No. 21-1811

Dear Mr. Kirsh:

      This is in response to your letter of January 4, 2007 indicating that Three Lower Counties Community Services, Inc., a Federally-qualified health center, has submitted a request for a hearing. In your letter, you suggest that we should begin our appeal at the fiscal intermediary level and move up to the Board, assuming dissatisfaction with the results at that initial level. Your letter, however, contradicts a prior (November 9, 2006) letter we received from the Chairperson of the Board, Suzanne Cochran, indicating that no relief could be afforded through the process your letter would commit us to follow (Attachment A). For obvious reasons, we presume that the earlier letter reflects the Board's proper final determination and that your letter was a mistake.

      Apart from the fact that the earlier letter was issued in a timely fashion and signed by the Chairperson of the Board, the procedure your letter suggests should be followed is obviously an inappropriate one. The issue Three Lower Counties wishes to contest is whether a regulatory requirement of the Health Care Financing Administration in the preamble to a 1992 rulemaking -- a final agency action -- was arbitrary and capricious, and otherwise unlawful, and therefore should be invalidated manifestly a fiscal intermediary contractor would lack the authority to invalidate a rule of its agency contractee. Similarly, the Board is bound to follow agency rules and is not in a legal position to overturn a decision of the Secretary or the Administrator of (now) CMS. Our

FELDESMAN TUCKER LEIFER FIDELL LLP

Steven R. Kirsh, Director
January 16, 2007
Page 2

original correspondence (Attachment B) to the Board sought a ruling on jurisdiction and the Chairperson's response provided one.

In summary, we already have a timely and otherwise proper decision of the Board, and intend to rely on it in any future action we may take regarding Three Lower Counties' concerns over the proprietary of certain regulatory requirements affecting its Medicare FQHC payment.

Sincerely,

FELDESMAN TUCKER LEIFER
FIDELL LLP

By: _____
Kathy S. Ghiladi

Enclosure

cc: Linda Swiderski, Senior Auditor, UGS
    Wilson C. Leong, BC & BS

RECEIVED

JAN 18 2007

PROVIDER REIMBURSEMENT
REVIEW BOARD



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671          FAX: 410-786-5298

Refer to:

NOV 0 9 2006

**RECEIVED**

Kathy S. Ghiladi, Esq.
Feldesman, Tucker, Leifer, Fidell, LLP
2001 L Street, NW
Second Floor
Washington, D.C. 20036-4910

JAN 1 8 2007

PROVIDER REIMBURSEMENT
REVIEW BOARD

RE: Three Lower Counties Community Services, Inc.
    Provider No. 21-1811

Dear Ms. Ghiladi:

The Provider Reimbursement Review Board (Board) has reviewed your October 10, 2006
letter seeking an advisory opinion on whether the Board has jurisdiction over the
Federally-qualified health centers cost cap and the physician productivity screen. This
letter is to advise you that the Board does not furnish advisory opinions on jurisdiction.
The only jurisdictional rulings issued by the Board involve cases pending before it.

If you have any questions regarding this matter, please contact Melanie Marolf-Fetchik,
Esq. from our staff by telephoning (410) 786-5599.

Sincerely,

Suzanne Cochran, Esq.
Chairman

Attachment
B

**FELDESMAN**
**TUCKER**
**LEIFER**
**FIDELL LLP**

October 10, 2006

**RECEIVED**

**VIA FIRST CLASS MAIL**

JAN 18 2007

PROVIDER REIMBURSEMENT
REVIEW BOARD

Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, Maryland 21244-2670

RE:  *Three Lower Counties Community Services, Inc.*
Provider No. 21-1811 - **Request for Ruling on Jurisdiction**
**Under 42 *U.S.C.* §1395oo(f)(1) and Expedited Judicial Review (EJR)**
**Under 42 *C.F.R.* §405.1842**

To Whom It May Concern:

### Introduction

This filing is made on behalf of Three Lower Counties Community Services, Inc.
("TLCCS"), and all other Federally-qualified health centers ("FQHCs") participating in the
Medicare Part B program, because they are situated similarly. By this filing, TLCCS seeks a
ruling as to whether the Provider Reimbursement Review Board ("PRRB") has jurisdiction to
entertain its challenges (described below) to two limits of a regulatory nature that have been
imposed on FQHC Medicare reimbursement:  (1) the FQHC cost cap, and (2) the physician
productivity screen.[1]  For the reasons set forth below, we do not believe the PRRB has
jurisdiction over these challenges. In the event that the PRRB determines otherwise -- *i.e.*, that it

---

[1] The Medicare FQHC payment cap was published in the preamble to the Health Care Financing
Administration's FQHC "final rules with comment period" in 1992. 57 *Fed. Reg.* 24961 (June
12, 1992). According to the preamble, the cap was to be only temporary pending sufficient
FQHC cost experience. The 1992 rules were reissued in 1996 without any substantial changes.
61 *Fed. Reg.* 14640 (April 3, 1996). Medicare productivity screens are generally authorized by,
but not defined in, formally promulgated regulations. 42 *C.F.R.* §§ 405.2468(c). When 42
*C.F.R.* 405.2468 was issued in 1992, the preamble to the rule noted that HCFA planned to use a
productivity screen of 4,200 patient visits per full-time physician. 57 *Fed. Reg.* 24,961, 24,967
(June 12, 1992). The 4,200 physician screen figure as well as other provider screens do not
appear in regulation, but are contained in CMS' Rural Health Clinic and Federally Qualified
Health Center Manual, at § 503.

FELDESMAN TUCKER LEIFER FIDELL LLP

has such jurisdiction -- we ask the PRRB immediately to place the challenges on its appeal docket.

### Nature of TLCCS's Challenges

TLCCS' challenges to the Medicare FQHC payment cap and the productivity screen relate to the underlying support for these cost limits. It is TLCCS' view that the limits are and have been arbitrary, capricious and impermissible constraints on the activities of *all* FQHCS and, as such, fail to meet the standards imposed by the Administrative Procedure Act ("APA") for final agency action. As with any APA case over such action, TLCCS intends to make its argument based on the agency record and the requirements of applicable law.

Our understanding that the PRRB would have no jurisdiction to entertain such a challenge presumes that the PRRB would be unable to provide appropriate relief in the circumstances; namely, a finding that the limits are unlawful under APA standards, and an order that would enjoin their further use[2/] and require corrective action to the extent the limits have adversely affected Medicare payments to FQHCs.

### Efforts to Secure Response from Fiscal Intermediary

As reflected in the attached correspondence[3], in advance of our submission of this filing and initial submission of TLCCS' Medicare cost report for the fiscal year ending 5/31/06, we queried appropriate representatives of TLCCS' Medicare fiscal intermediary as to whether that organization possessed jurisdiction over the foregoing challenges. In response, we were informed that the intermediary would put that question to CMS and that it had done so.

Whether CMS would be the proper party to answer this question is doubtful, at best. In any event, CMS apparently failed to respond to the intermediary's request, a conclusion we draw from the fact that the intermediary has ceased communicating with us over the jurisdictional question. Suffice it to say that the intermediary never answered the jurisdictional question. We are accordingly left with no choice but to assume that the answer is obvious: that the intermediary lacks jurisdiction to set aside any CMS requirement, including the limits here at issue.

We stand ready to respond to any questions or requests for information the PRRB or its staff may have in regard to this filing.

---

[2/] Limits on reimbursement such as those at issue do not merely cause cost disallowances when they are exceeded. They also affect FQHC decisionmaking. For example, as specifically found by the Health Resources and Services Administration ("HRSA") (which oversees the Public Health Service Act grants FQHCs receive), FQHC compliance with the productivity screen (which had originally been imposed by HRSA) was leading to bad medicine. This finding caused HRSA to abandon the screen as a grant requirement.

[3] This correspondence also includes an authorization from TLCCS's Executive Director permitting our firm's representation of the health center in this matter.

FELDESMAN TUCKER LEIFER FIDELL LLP

Respectfully submitted,

FELDESMAN TUCKER LEIFER FIDELL LLP

By:     James L. Feldesman
        Kathy S. Ghiladi

Enclosures

cc:     UGS
        J. Robbins

## Ghiladi, Kathy

| | |
|---|---|
| **From:** | Boyd, Mary Ann [MaryAnn.Boyd@ugswlp.com] |
| **Sent:** | Tuesday, August 15, 2006 3:10 PM |
| **To:** | Greer, Amber; Ghiladi, Kathy |
| **Cc:** | Cox, Tom |
| **Subject:** | Three Lower Counties Community Services, Inc. |

Jim,
I am not completely clear on what you are asking when you say "legal right of CMS to impose either the per visit cap or the productivity screen." I have given you a publication reference for the productivity standard rule and you are probably aware that the maximum payment limit provision is found in Section 1833(f) of the Social Security Act.

Referring back to Kathy's original letter, an appeal of either of these issues should be directed to our office within 180 days of the issuance of a Notice of Program Reimbursement for the cost reporting period in question. Such a determination is necessary to initiate the appeal process. Further instructions will be enclosed with that notice and are detailed in CFR 405.1809-405.1890 and CMS Pub 15-1, Chap. 29.

If you have further questions, please feel free to call me.

Mary Ann Boyd
Senior Auditor
United Government Services, LLC
Richmond, VA
(804) 521-2304
maryann.boyd@ugswlp.com

The information contained in this electronic message may be confidential, is intended for the use of the recipient(s) named above, and may be legally privileged. If you are not the intended recipient of this communication, you are hereby notified that any use, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please immediately return it to the sender and delete the original message and any copy of it from your computer system. If you have any questions concerning this message, please contact the sender. Thank you.

-----Original Message-----
**From:** Greer, Amber [mailto:AGreer@feldesmantucker.com]
**Sent:** Monday, August 14, 2006 1:05 PM
**To:** Boyd, Mary Ann
**Cc:** Ghiladi, Kathy
**Subject:**

MaryAnn --

I don't know whether Kathy told you that she would be on vacation this week and that I would be taking her place in regard to Three Lower Counties Community Services, Inc. ("TLC"). As Kathy's pinch hitter, I want to respond to your August 11 email indicating that you, as intermediary, have authority to grant exceptions to the so-called productivity standards or screen. We were aware of that authority and, without waiving TLC's future right to ask for it to be exercised, wanted you to be clear that the legal challenge we wish to make is addressed to the legal right of HHS/CMS to impose either the per visit cap or the productivity screen.

Before Kathy left for vacation I had asked her to ask you to let us know to whom in that vast federal

10/10/2006

bureaucracy known as CMS you sent the inquiry regarding TLC's ability to seek an administrative determination (as opposed to legal action in court) that the cap and screen are unlawful exercises of authority. If Kathy did not ask you, let me ask you now, and if she did, pardon me for asking twice. In any event, we would appreciate knowing the federal official and/or office that received the inquiry.

Jim

PS    We also would appreciate a copy of the inquiry.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

10/10/2006

## Greer, Amber

| | |
|---|---|
| **From:** | Ghiladi, Kathy |
| **Sent:** | Friday, August 11, 2006 3:40 PM |
| **To:** | Feldesman, Jim |
| **Subject:** | FW: Three Lower Counties Community Services, Inc. |

Jim, So far there is nothing in writing from UGS to CMS.   -- Kathy

Kathy S. Ghiladi, Esq.
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., 2nd Floor
Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm Feldesman Tucker
Leifer Fidell LLP and is/are intended solely for the use of the named recipient(s).  This
e-mail may contain privileged attorney/client communications and/or work product.  Any
dissemination by anyone other than an intended recipient is prohibited.  If you are not a
named recipient, you are prohibited from any further viewing of the email and/or any
attachment(s) or from making any use of the e-mail and/or attachment(s).  If you have
received this e-mail in error, notify the sender immediately and delete the e-mail, any
attachments, and all copies from any drives or storage media and destroy any printouts.

IRS Circular 230 Disclosure:  Under U.S. Treasury regulations, we are required to inform
you that any tax advice contained in this e-mail or any attachment hereto is not intended
to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue
Code.

-----Original Message-----
From: Boyd, Mary Ann [mailto:MaryAnn.Boyd@ugswlp.com]
Sent: Friday, August 11, 2006 3:37 PM
To: Ghiladi, Kathy
Subject: RE: Three Lower Counties Community Services, Inc.

So far it's just a question to my contact at CMS about the process. I will copy you by
mail if he asks me to forward your letter to his office.  He may refer me to someone else.
Will keep you posted and have a great vacation! Mary Ann

-----Original Message-----
From: Ghiladi, Kathy [mailto:KGhiladi@feldesmantucker.com]
Sent: Friday, August 11, 2006 3:28 PM
To: Boyd, Mary Ann
Subject: RE: Three Lower Counties Community Services, Inc.


Would it be possible to receive a copy of the referral to CMS?  I am out on vacation next
week, but it could be directed to my senior partner, Jim Feldesman, either at the address
below or by e-mail to jfeldesman@ftlf.com.  Thank you. -- Kathy

Kathy S. Ghiladi, Esq.
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., 2nd Floor
Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm Feldesman Tucker
Leifer Fidell LLP and is/are intended solely for the use of the named recipient(s).  This
e-mail may contain privileged attorney/client communications and/or work product.  Any
dissemination by anyone other than an intended recipient is prohibited.  If you are not a

named recipient, you are pro ited from any further viewing che email and/or any
attachment(s) or from making any use of the e-mail and/or attachment(s). If you have
received this e-mail in error, notify the sender immediately and delete the e-mail, any
attachments, and all copies from any drives or storage media and destroy any printouts.

IRS Circular 230 Disclosure: Under U.S. Treasury regulations, we are required to inform
you that any tax advice contained in this e-mail or any attachment hereto is not intended
to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue
Code.

-----Original Message-----
From: Boyd, Mary Ann [mailto:MaryAnn.Boyd@ugswlp.com]
Sent: Friday, August 11, 2006 2:23 PM
To: Ghiladi, Kathy
Subject: Three Lower Counties Community Services, Inc.

Dear Ms. Ghiladi,
In response to your letter dated July 25, 2006 to Christal Brown, I have forwarded your
question regarding an appeal to the FQHC maximum payment limits to CMS. I will let you
know as soon as I hear back from them.

Also, you may be interested to know that the county designation (Somerset and Wicomico)
for this provider changed from rural to urban effective October 1, 2004. The applicable
rates for 2005 and 2006 are $109.88 and $112.96 respectively.

Sincerely,
Mary Ann Boyd
Senior Auditor
United Government Services, LLC
Richmond, VA
(804) 521-2304
maryann.boyd@ugswlp.com

The information contained in this electronic message may be confidential, is intended for
the use of the recipient(s) named above, and may be legally privileged. If you are not
the intended recipient of this communication, you are hereby notified that any use,
distribution or copying of this message is strictly prohibited. If you have received this
communication in error, please immediately return it to the sender and delete the original
message and any copy of it from your computer system. If you have any questions
concerning this message, please contact the sender. Thank you.


CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole
use of the intended recipient(s) and may contain confidential and privileged information
or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is
prohibited. If you are not the intended recipient, please contact the sender by reply e-
mail and destroy all copies of the original message.


CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole
use of the intended recipient(s) and may contain confidential and privileged information
or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is
prohibited. If you are not the intended recipient, please contact the sender by reply e-
mail and destroy all copies of the original message.

**Ghiladi, Kathy**

| | |
|---|---|
| **From:** | Boyd, Mary Ann [MaryAnn.Boyd@ugswlp.com] |
| **Sent:** | Friday, August 11, 2006 2:42 PM |
| **To:** | Ghiladi, Kathy |
| **Subject:** | RE: Three Lower Counties Community Services, Inc. |

Kathy,
We as intermediary have authority to address possible exceptions to the productivity
standards on a annual cost reporting period basis. Pub 100-4, Chapter 9, Section 40.3 may
provide you with more information.

Mary Ann

-----Original Message-----
From: Ghiladi, Kathy [mailto:KGhiladi@feldesmantucker.com]
Sent: Friday, August 11, 2006 2:27 PM
To: Boyd, Mary Ann
Subject: RE: Three Lower Counties Community Services, Inc.


Thank you for getting back to me. Could you also advise as to or find out about the appeal
process applicable to the Medicare provider productivity screens (4200 for physicians and
2100 for others)?  I realize that I should have included that issue in my letter as well.

Again, thanks for letting me know of the status of our request.  I appreciate it. --
Kathy

Kathy S. Ghiladi, Esq.
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., 2nd Floor
Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm Feldesman Tucker
Leifer Fidell LLP and is/are intended solely for the use of the named recipient(s).  This
e-mail may contain privileged attorney/client communications and/or work product.  Any
dissemination by anyone other than an intended recipient is prohibited.  If you are not a
named recipient, you are prohibited from any further viewing of the email and/or any
attachment(s) or from making any use of the e-mail and/or attachment(s).  If you have
received this e-mail in error, notify the sender immediately and delete the e-mail, any
attachments, and all copies from any drives or storage media and destroy any printouts.

IRS Circular 230 Disclosure:  Under U.S. Treasury regulations, we are required to inform
you that any tax advice contained in this e-mail or any attachment hereto is not intended
to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue
Code.

-----Original Message-----
From: Boyd, Mary Ann [mailto:MaryAnn.Boyd@ugswlp.com]
Sent: Friday, August 11, 2006 2:23 PM
To: Ghiladi, Kathy
Subject: Three Lower Counties Community Services, Inc.

Dear Ms. Ghiladi,
In response to your letter dated July 25, 2006 to Christal Brown, I have forwarded your
question regarding an appeal to the FQHC maximum payment limits to CMS.  I will let you
know as soon as I hear back from them.

Also, you may be interested to know that the county designation (Somerset and Wicomico)
for this provider changed from rural to urban effective October 1, 2004.  The applicable

rates for 2005 and 2006 are $109.88 and $112.96 respectively.

Sincerely,
Mary Ann Boyd
Senior Auditor
United Government Services, LLC
Richmond, VA
(804) 521-2304
maryann.boyd@ugswlp.com

The information contained in this electronic message may be confidential, is intended for the use of the recipient(s) named above, and may be legally privileged.  If you are not the intended recipient of this communication, you are hereby notified that any use, distribution or copying of this message is strictly prohibited.  If you have received this communication in error, please immediately return it to the sender and delete the original message and any copy of it from your computer system.  If you have any questions concerning this message, please contact the sender.  Thank you.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information or otherwise protected by law. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671          FAX: 410-786-5298

Suzanne Cochran, Esq., Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West
Yvette C. Hayes

Refer to:

07-0538
CERTIFIED MAIL

APR 2 0 2007

Kathy S. Ghiladi, Esq.
Feldesman, Tucker, Leifer, Fidell, LLP
2001 L Street, N.W., Second Floor
Washington, D.C. 20036-4910

RE: Three Lower Counties Community Services, Inc.
Provider No. 21-1811
PRRB Case No. 07-0538

Dear Ms. Ghiladi:

The Provider Reimbursement Review Board (Board) has reviewed your correspondence dated October 10, 2006, December 21, 2006 and January 17, 2007 regarding the above-referenced Provider. The Board's jurisdictional determination is set forth below.

Background

On October 10, 2006, the Provider filed an appeal for itself and all other similarly situated Federally-qualified health centers (FQHCs) participating in Medicare Part B. The Provider sought a ruling as to whether the Board has jurisdiction to entertain challenges regarding two regulatory limitations imposed on FQHC Medicare reimbursement related to (1) the FQHC cost cap, and (2) the physician productivity screens. The Provider stated that it did not believe the Board had jurisdiction over those issues, but asked that the Board place the challenges on the appeal docket. The Board responded on November 9, 2006, and advised the Provider that the Board did not issue advisory opinions on jurisdiction.

The Provider responded to the Board's letter on December 21, 2006, stating that the purpose of its previous correspondence was to ascertain whether the Board has jurisdiction when a provider is seeking to challenge a regulation or cost limit on its face. The Provider assumed that the Board has no administrative process to challenge the FQHC cost limits on their face. Once again, a jurisdictional determination was requested.

In response to the Board's January 4, 2007 Acknowledgement and Critical Due Dates letter, the Provider stated that the procedure set forth in that letter was "obviously an inappropriate one" and seeks a jurisdictional determination. The Provider contends that the regulation regarding the FQHC cost limits is arbitrary and capricious and otherwise unlawful.

Provider Reimbursement Review Board
Page 2 Kathy A. Ghiladi, Esq.                                CN05-0538

Decision of the Board

Pursuant to 42 U.S.C. § 1395oo(a) and 42 C.F.R. §§ 405.1835 and 405.1841, a provider
has a right to a hearing before the Board with respect to a cost claimed on a timely filed
cost report if it is dissatisfied with the final determination of the intermediary, the amount
in controversy is $10,000 or more and the request for hearing is filed within 180 days of
the date of the final determination. In this case, the Provider has not identified a final
determination, the fiscal year end or the amount in controversy for the issues it seeks to
appeal as required by the statute and regulation for Board jurisdiction. Consequently, the
Board concludes that it lacks jurisdiction over the appeal. Once the Provider is able to
comply with these requirements it may file a hearing request with the Board. At that time
the Board will determine if it has jurisdiction over the substantive issue under appeal and,
potentially, whether expedited judicial review under 42 U.S.C. § 1395oo(f) and 42 C.F.R.
§ 405.1842 is appropriate.

Review of this determination is available under the provisions of 42 U.S.C. § 1395oo(f)
and 42 C.F.R. § 405.1875 and 405.1877.

Board Members Participating

> Suzanne Cochran, Esq.
> Gary B. Blodgett, DDS
> Elaine Crews Powell, CPA
> Anjali Mulchandani-West
> Yvette C. Hayes

FOR THE BOARD:

Suzanne Cochran, Esq.
Chairman

Enclosures: 42 U.S.C. § 1395oo(f) and 42 C.F.R. § 405.1875-405.1877

cc: Linda Swiderski, National Gov't Services (WI)
    Wilson Leong, BCBSA

Not Reported in F.Supp.                                                                    Page 1
Not Reported in F.Supp., 1990 WL 282590 (N.D.Tex.), Med & Med GD (CCH) P 39,056
(Cite as: Not Reported in F.Supp.)

**c**

Colorado Clinical Labs, Inc. v. Newman
N.D.Tex.,1990.

United States District Court, N.D. Texas, Dallas Division.
COLORADO CLINICAL LABS, INC. et al.
v.
NEWMAN, et al.
**No. CA3-89-1834-D.**

May 24, 1990.

FITZWATER, District Judge.

**\*1** The question presented in this case is whether 42 U.S.C. § 1395ff, as amended by the Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99-509, § 9341(a)(1)(B), *reprinted in* 1986 U.S.Code Cong. & Admin.News 1874, 2037, requires plaintiffs to exhaust administrative remedies pursuant to 42 U.S.C. § 405(g) before pursuing this action to recover travel allowance and personnel costs incurred in collecting laboratory samples. For the reasons set forth below, the court concludes plaintiffs must exhaust such remedies.

I

Plaintiffs are a group of medical laboratories that provide clinical diagnostic laboratory services to Medicare Part B subscribers.[FN1] Among the reimbursable expenses under Part B are "a nominal fee to cover the appropriate costs in collecting the sample on which a clinical diagnostic laboratory test is performed" and "a fee to cover the transportation and personnel expenses for trained personnel to travel to the location of an individual to collect the sample." 42 U.S.C. § 1395l(h)(3). In establishing the fee to cover these expenses "the Secretary shall provide a method for computing the fee based on the number of miles traveled and the personnel costs associated with collection of each individual sample ..."[FN2] *Id.*

Plaintiffs contend the Secretary has yet to adopt a regulation by which the travel allowance and per-

sonnel costs are to be established. Rather, in plaintiffs' view the Secretary improperly delegated the task to the carriers that administer the Part B program.[FN3] Plaintiffs argue that Blue Cross/Blue Shield of Texas, the carrier in this case, has employed faulty methodology in setting the fee and that reimbursements made to plaintiffs therefore "fail[ ] to comply with the statutory mandate...." Plaintiffs assert they have thereby been deprived of procedural and substantive due process, equal protection of the law, and the privileges and immunities guaranteed by the United States Constitution. Finally, plaintiffs posit that the Secretary has violated the Administrative Procedure Act ("APA").

The administrative process that Congress has specified for Part B provides that the carrier make an initial determination on requests for payment. 20 C.F.R. § 405.803. A carrier may not make a decision on "any issue or factor for which the Social Security Administration or the Health Care Financing Administration has sole responsibility." *Id.* The initial determination is final and binding unless it is reviewed in accordance with the procedure provided in the Code of Federal Regulations. *Id.* § 405.806. A party who is dissatisfied with an initial determination may request carrier review. *Id.* § 405.807. The carrier must then separately affirm or revise the determination in question. *Id.* § 405.810. After review by the carrier, if the amount in controversy is more than $100, any party may request a hearing. *Id.* § 405.820. The hearing officer is designated by the carrier. *Id.* § 405.823. If the amount in controversy is greater than $500, any individual dissatisfied with the determination of the hearing officer is then entitled to a hearing "by the Secretary to the same extent as is provided in Section 405(b) of [title 42]" and, if the amount in controversy is greater than $1,000, "to judicial review of the Secretary's final decision." 42 U.S.C. § 1395ff(b)(1); *Id.* § 1395ff(b)(2)(B); 53 Fed.Reg. 20,023 (1988). The procedure provided by 42 U.S.C. § 405(b) consists first of a hearing before an administrative law judge ("ALJ"). 20 C.F.R. § 404.929. A party dissatisfied with the ALJ's de-

Not Reported in F.Supp. Case 1:07-cv-00844-ESH    Document 9-8    Filed 08/08/2007    Page 2 of 8 Page 2
Not Reported in F.Supp., 1990 WL 282590 (N.D.Tex.), Med & Med GD (CCH) P 39,056
**(Cite as: Not Reported in F.Supp.)**

cision may request review by the Appeals Council. *Id.* § 404.967. If the Appeals Council declines to review the ALJ's decision, or if a party is dissatisfied with the Appeals Council's decision, an action may then be filed in federal district court. *Id.* § 404.981.

**\*2** Plaintiffs have informally raised their dissatisfaction with the methods used to calculate their reimbursement with the Health Care Financing Administration ("HCFA"), the branch of the Department of Health and Human Services that oversees the administration of the Medicare Part B program. Plaintiffs first contacted William Roper, M.D. the Administrator of HCFA. Plaintiffs' correspondence with Dr. Roper led ultimately to contact with the HCFA regional administrator. The regional office conducted an investigation and concluded the Texas travel allowance was appropriate. The final letter from the regional administrator states "further appeal of this issue does not exist within the administrative process." The administrator has testified by deposition that this statement was not an indication that plaintiffs had exhausted their remedies under Part B, but rather "all we were referring to in this letter is that we [HCFA] had done all the review we think is necessary within HCFA to determine that Blue Cross computed this appropriately, and we were not discussing or inferring or alleging to any other appeal process, through the Part B process that's allowed by law." Plaintiffs thereafter filed suit in this court.

The Secretary now moves to dismiss this action, contending the plaintiffs have failed to exhaust their administrative remedies. The Secretary asserts that the administrative process is the sole avenue to judicial review and, because plaintiffs have not adhered to this process, the court should dismiss for lack of subject matter jurisdiction. Plaintiffs respond that: (1) administrative review by the carrier and the Secretary is not statutorily mandated for challenges to the "overall methodology used to establish Medicare Part B fee schedules, rather than to the amount paid on an individual claim;" (2) exhaustion of the remedies suggested would be a "time-consuming fruitless exercise;" (3) administrative remedies are unavailable for plaintiffs'

claims of improper delegation of authority from the Secretary to Blue Cross/Blue Shield of Texas; and (4) the constitutional issues are collateral to the Part B travel allowance methodology and thus subject to judicial review without exhaustion.

## II

### A

In order to decide whether plaintiffs may litigate their claims without first seeking further administrative relief, the court examines initially whether the 1986 amendments to 42 U.S.C. § 1395ff-which afford Part B claimants greater access to judicial review-eliminate the necessity for Part B claimants who raise statutory or constitutional challenges to exhaust administrative remedies.[FN4]

Prior to January 1, 1987 Congress did not provide for judicial review of administrative decisions related to the amount of Part B claims, *United States v. Erika, Inc.,* 456 U.S. 667, 207-08 (1982), but did allow such review with respect to Part A claims. *Id.* Relying upon this distinction and the legislative history accompanying the bills enacting and revising the Medicare program, the Supreme Court concluded "Congress deliberately intended to foreclose further review of [Part B] claims." *Id.* at 208. Thus the Court determined that the final remedy available to a claimant dissatisfied with the amount of an award under Part B was a hearing by the carrier. *Id.* at 206-07.

**\*3** In *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667 (1986), the Court explained the limits of *Erika.* A number of physicians challenged a regulation that varied the amount of Part B benefits payable based upon whether the family physician who rendered the services was board certified. *Id.* at 668-69. On the basis of *Erika* the Secretary argued that review of the regulation was foreclosed because Congress had forbidden judicial review of all questions affecting the amount of benefits payable under Part B of the Medicare program. The Court disagreed, concluding that "an attack on the validity of a regulation is not the kind of administrative action that we described in *Erika* ... with re-

Not Reported in F.Supp. Case 1:07-cv-00844-ESH   Document 9-8   Filed 08/08/2007   Page 3 of 8 Page 3
Not Reported in F.Supp., 1990 WL 282590 (N.D.Tex.), Med & Med GD (CCH) P 39,056
(Cite as: Not Reported in F.Supp.)

spect to which the Act impliedly denies judicial review." *Id.* at 676. Again relying on legislative history, the Court held that "Congress did not preclude review of the method by which Part B awards are computed (as opposed to the computation)...." *Id.*

*Michigan Academy* rests heavily on "the strong presumption that Congress intends judicial review of administrative action." 476 U.S. at 670. The Court found it "implausible to think [Congress] intended that there be *no* forum to adjudicate statutory and constitutional challenges to regulations promulgated by the Secretary." *Id.* at 678 (emphasis in original). The Court's disposition of the case permitted it to avoid the " 'serious constitutional question' that would arise if [the Court] construed § 1395ii to deny a judicial forum for constitutional claims arising under Part B of the Medicare program." *Id.* at 681 n. 12. The Court therefore held that matters which Congress did not leave to the carrier for determination-such as the validity of the Secretary's regulations-were not insulated from judicial review. *Id.* at 678.

In interpreting *Michigan Academy* the Fifth Circuit has criticized solicitous reliance upon the semantic distinction between "amount" and "methodology" challenges, pointing out that "[i]t is crucial to go beyond semantics because all challenges to Part B benefit determinations can be recast as reviewable challenges to methodology since all awards of Part B benefit determinations or payments are based on a method of calculation." *Texas Medical Ass'n v. Sullivan,* 875 F.2d 1160, 1165 (5th Cir.), *cert. denied;* 493 U.S. 1011, 110 S.Ct. 573 (1989).[FN5] The Fifth Circuit interprets *Michigan Academy* to make initial resort to the district court appropriate only in those cases where the administrative mechanisms for review would be ineffective because the person designated to adjudicate the claim does not have the power to adopt the plaintiff's point of view and the decisionmaker's ruling is final. See *id.* at 1166, *accord Ayuda, Inc. v. Thornburgh,* 880 F.2d 1325, 1337 n. 11 (D.C.Cir.) ("The Court thus declined to deem the regulation at issue in *Michigan Academy* an 'amount determination', because that would have prevented any judicial review of the

rule and raised 'serious constitutional issues' "), *petition for cert. filed,* 58 U.S.L.W. 3451 (U.S. Dec. 27, 1989) (No. 89-1018); *Bethesda Hospital v. Secretary,* 810 F.2d 558, 561 (6th Cir.1987) (*Michigan Academy* dealt only with judicial review in the absence of meaningful administrative review procedures), *rev'd on other grounds,* 485 U.S. 399 (1988).

*4 The proposition that *Michigan Academy* addresses only situations in which Congress has failed to provide a meaningful administrative remedy is further supported by the Court's decision in *Heckler v. Ringer,* 466 U.S. 602 (1984), a Part A case that preceded *Michigan Academy. Ringer* involved a challenge by Medicare claimants to the Secretary's policy regarding payment for bilateral carotid body resection under Part A of the Medicare program. *Id.* at 604-05. The Secretary had issued an administrative instruction prohibiting payment for the procedure when performed to relieve respiratory distress. *Id.* at 607. The order was intended to have a binding effect on all administrative law judges and the Appeals Council. *Id.* at 608. The claimants complained that the Secretary's instructions violated their constitutional right to due process and numerous statutory provisions. *Id.* at 610. The circuit court concluded that, to the extent the claimants complained of the procedure used to determine eligibility for benefits rather than the amount of benefits, the claimants were not required to exhaust their administrative remedies before bringing suit in district court.[FN6] The Supreme Court rejected this rationale, noting that it was improper to inquire whether the claimants challenged the procedure for reaching a decision. *Id.* at 615. Relying on 42 U.S.C. § 405(h), as applied to the Medicare program by 42 U.S.C. § 1395ii, the Court held the correct determination to be whether the claim arose under the Medicare Act, because such claims may be judicially reviewed only after the administrative process is exhausted. *Id.* at 614-15.[FN7] The Court determined that a claim arises under the Medicare Act if "both the standing and the substantive basis for the presentation" of the claim is the Medicare Act. *Id.* at 615 (quoting *Weinberger v. Salfi,* 422 U.S. 749, 760-61 (1975) (Social Security Act case)). A claim "arises under" the Act even if it

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Case 1:07-cv-00844-ESH    Document 9-8    Filed 08/08/2007    Page 4 of 8 Page 4
Not Reported in F.Supp., 1990 WL 282590 (N.D.Tex.), Med & Med GD (CCH) P 39,056
**(Cite as: Not Reported in F.Supp.)**

also arises under the Constitution. *Id.* Thus the mere fact that a claim is a constitutional challenge to an agency action does not prevent it from arising under the Medicare Act. *Id.* It is also of no consequence that the relief sought is declaratory or injunctive instead of an award of benefits. *Id.*

Relying upon the *Ringer* analysis, the Northern District of Alabama has concluded that the 1986 amendments to 42 U.S.C. § 1395ff require claimants under Part B to undergo the administrative process before they may present their claims to a district court. *Oxygen Equipment Co. v. Sullivan*, No. 89-P-0703-S, slip op. at 3 (N.D.Ala. June 29, 1989) (available on Westlaw 1989 WL 107596). *Oxygen Equipment* involved a challenge to certain guidelines issued by the HCFA to carriers. The guidelines prohibited durable medical equipment providers from being considered qualified providers of laboratory services. *Id.* at 1. The plaintiffs argued that the guideline was promulgated in violation of the APA and that denial of their claim violated due process. *Id.* at 3 n. 3. They sought injunctive relief and damages. The Alabama district court concluded the claim arose under the Medicare Act and that jurisdiction was precluded "not only as to claims seeking benefits but as to constitutional challenges...." *Id.* at 2 (citing *Salfi*, 422 U.S. at 760-61). The court concluded that *Ringer* rather than *Michigan Academy* controlled. *Id.* at 2-3. The most significant reason for this result, according to the court, was that "the premise underlying the holding in *Michigan Academy* no longer exists." *Id.* at 3.

**\*5** The District of Massachusetts reached a contrary conclusion in *Griffith v. Bowen*, 678 F.Supp. 942, 945 (D.Mass.1988). *Griffith* involved a challenge to the Secretary's promulgation of a list of durable medical equipment for which reimbursement could be provided under Part B. Plaintiffs sought declaratory and injunctive relief, arguing that Congress had mandated individual consideration of each claim. *Id.* at 943. Despite the similarity of the facts to *Ringer,* the court did not consider its applicability to the changes in administrative and judicial review provided to Part B recipients. The court con-

cluded that "all that Congress did in the 1986 Act was to extend judicial review to Medicare Part B recipients," *Id.* at 945, and reasoned that "Congress saw fit to provide for some judicial review of certain benefit denials under Medicare Part B, while the Supreme Court held there is almost always jurisdiction to review acts challenged as unlawful and unconstitutional.... They are, in effect, but two vessels of judicial review which operate in separate seas of legal challenge." *Id.*

This court adopts today an approach similar to that followed in *Oxygen Equipment.* Cognizant of the Fifth Circuit's admonition that it is inappropriate to delve into the distinction between "method" and "amount" challenges, the court focuses instead upon the adequacy of the procedure Congress has provided to plaintiffs to present their claims. By means of the 1986 revisions to 42 U.S.C. § 1395ff, Congress has made the complete scope of administrative and judicial review available to Part B beneficiaries who are dissatisfied with the amount of benefits they receive and who meet the amount in controversy requirements. Thus the primary underpinning of *Michigan Academy* is no longer present and the court concludes that it is appropriate to apply the analysis adopted in *Ringer* to determine whether plaintiffs are properly before the court. It is to this question that the court now turns.

**B**

Under *Ringer,* as a general proposition, "[j]udicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim in the same manner as provided in 42 U.S.C. § 405(g)...." 466 U.S. at 605. Hence a claimant may only present its claims to the district court after it "has pressed [its] claim through all designated levels of administrative review." *Id. Ringer* required the claimants to follow the prescribed administrative procedure notwithstanding that they sought only declaratory and injunctive relief, *id.* at 615-16, and that the claimants challenged the Secretary's decision regarding the manner in which their claims would be handled. *Id.* at 614. The Court held that the claimants essentially

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Case 1:07-cv-00844-ESH    Document 9-8    Filed 08/08/2007    Page 5 of 8
Page 5
Not Reported in F.Supp., 1990 WL 282590 (N.D.Tex.), Med & Med GD (CCH) P 39,056
**(Cite as: Not Reported in F.Supp.)**

presented a claim for benefits, their statutory and constitutional claims were "inextricably intertwined" with their claims for benefits, and thus "all aspects of respondents' claim for benefits should be channeled first into the administrative process which Congress has provided...." *Id.*

**\*6** Plaintiffs in this case are in a virtually identical situation. Like the claimants in *Ringer,* they do not specifically seek benefits but instead disapprove of the Secretary's decision concerning the manner in which their claims have been assessed. Their ultimate desire is to attain greater reimbursement for their services. Just as in *Ringer,* their statutory and constitutional claims are thus "inextricably intertwined" and not collateral to the claim for benefits. Congress has now provided an administrative route to judicial review for Part B claimants. Plaintiffs must therefore follow that path before invoking the jurisdiction of this court.

Plaintiffs argue, however, that Congress did not intend to open the administrative process to challenges relating to the method of calculating benefits. In support of this argument they point out that the 1986 revisions to 42 U.S.C. § 1395ff(a) grant the Secretary the power to make determinations "of the amount of benefits under Part A or Part B ... and any other determination with respect to a claim for benefits under Part A...." This argument is unpersuasive. First, 42 U.S.C. § 1395ff(a) deals with the Secretary's power to make initial determinations and does not address administrative or judicial review. If plaintiffs' interpretation is correct, Congress intended to withhold from the Secretary the right to make an initial determination of the method by which benefits are calculated under Part B. There is no evidence to suggest this was Congress' desire. Moreover, the court has determined, applying the *Ringer* analysis, that the claim plaintiffs raise is in fact grounded upon a challenge to the amount of benefits paid. Thus even under the plaintiffs' reading of the statute the Secretary has the power to address their claims.

Plaintiffs also argue that Congress was aware of the amount/methodology distinction announced in

*Michigan Academy* and chose not to redraft the language of 42 U.S.C. § 1395ff(b)(1) to make clear that the section extended review to both amount and methodology challenges under Part B. They support this argument by reference to § 1395ff(b)(4), which prohibits challenges to regulations or instructions that relate to "a method for determining the amount of payment" which were issued before January 1, 1981. This argument is equally unpersuasive. Congress was also presumably aware of *Ringer,* in which the Court refused to distinguish between challenges to the amount of benefits and attacks upon the procedure by which those amounts were determined. In extending judicial review to Part B claimants, Congress employed the same language it had previously used to confer judicial review upon Part A claimants. It is logical to assume that, by using the same language for Part A and Part B, Congress intended to achieve identical levels of review. Subsection (b)(4) does not alter the force of this presumption. If subsection (b)(4) indicates an intent to retain the amount/methodology distinction, as plaintiffs suggest, it is curious that Congress did not make the difference clear in subsection (b)(2), given the Supreme Court's conclusion in *Ringer* that no such distinction should be made.

**\*7** The route Congress has provided is set forth in 42 U.S.C. § 405(g), as applied to Medicare by 42 U.S.C. § 1395ii. Section 405(g) consists of a "nonwaivable requirement that a 'claim for benefits shall have been presented to the Secretary' " and "a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant." *Ringer,* 466 U.S. at 617 (citing *Mathews v. Eldridge,* 424 U.S. 319, 328 (1976)). Plaintiffs argue they have satisfied the nonwaivable requirement and should be excused from the waivable requirement.

Assuming, without deciding, that the plaintiffs are correct in arguing that they have satisfied the nonwaivable requirement, the court concludes there is no basis in this case for excusing compliance with the waivable requirement that plaintiffs pursue their administrative remedies.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Case 1:07-cv-00844-ESH   Document 9-8   Filed 08/08/2007   Page 6 of 8 Page 6
Not Reported in F.Supp., 1990 WL 282590 (N.D.Tex.), Med & Med GD (CCH) P 39,056
**(Cite as: Not Reported in F.Supp.)**

The purposes of the exhaustion requirement are manifold. Among them are:

(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." *Patsy v. Florida Int'l Univ.*, 634 F.2d 900, 903 (5th Cir.1981) (en banc) (summarizing discussion in *McKart v. United States*, 395 U.S. 185, 193-95 (1969), *rev'd on other grounds*, 457 U.S. 496 (1982)).

The exhaustion requirement is, of course, subject to exceptions. The traditional ones, articulated in *Patsy,* include inadequacy of the administrative remedy, inability of the administrative remedy to address to constitutionality of a legislative act, co-extensiveness of the question of the adequacy of the administrative remedy and the merits of the claim, and certainty that the claim will be rejected. *Id.* at 903-04. Plaintiffs contend they need not exhaust their administrative remedies because the remedies are inadequate and because it is clear their claim will be rejected.

An available administrative remedy is inadequate if it "will not give relief commensurate with the claim, or the remedy would be so unreasonably delayed as to create a serious risk of irreparable injury." *Id.* at 903. Plaintiffs argue that it would be unfair to require them to challenge each and every claim for benefits in the past three years because to do so would require "untold amounts of time" and because of "the delay caused in pursuing review by HCFA." Plaintiffs point out that there is a six-month statute of limitations for review of initial determinations which may be extended at the carrier's discretion. The court is unpersuaded.

**\*8** The specter of undergoing thousands of individual administrative appeals is illusory because claims involving common issues of law or fact may be aggregated in the administrative process. 42 U.S.C. § 1395ff(2). The possibility that some of plaintiffs' claims may go uncompensated is the result of plaintiffs' choice to seek the assistance of the HCFA rather than to pursue its claims through the administrative process established by Congress. There is no contention that plaintiffs could not have been adequately compensated had they pursued their remedies in a timely fashion and ultimately prevailed. The mere fact that plaintiffs may have waived some of their claims is insufficient.

Plaintiffs also contend the outcome of their administrative claims is pre-ordained. In support of this position plaintiffs assert that a hearing officer may not deviate from HCFA's guidelines. Moreover, according to plaintiffs, HCFA has issued a position paper concluding the method adopted by Blue Cross/Blue Shield is adequate. This argument is unavailing. It is true the carrier's hearing officer is bound by HCFA's decisions. 42 C.F.R. § 405.860. But the court is unaware of any authority that obligates ALJs and the Appeals Council to follow HCFA policy statements and guidelines.[FN8] Only the decision of the Appeals Council (or the ALJ if the Appeals Council denies review) is the final decision of the Secretary. 20 C.F.R. § 404.981. Plaintiffs have not adequately demonstrated that pursuing the administrative process will be a useless exercise. The purposes of the exhaustion doctrine are not served by injecting an Article III court in a dispute into which it need not venture or by denying an agency the opportunity to correct its own alleged errors.

Plaintiffs' claims are accordingly dismissed without prejudice in a judgment filed today.[FN9]

> FN1. Medicare is a federally subsidized health insurance program for persons who

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 282590 (N.D.Tex.), Med & Med GD (CCH) P 39,056
(Cite as: Not Reported in F.Supp.)

are 65 and older or who are disabled. Medicare Part A covers institutional inpatient services. Medicare Part B is a voluntary program that supplements Part A coverage. See 42 U.S.C. §§ 1395j, 1395k, 1395r, 1395s, 1395w.

FN2. This method need not be applied unless the provider of the tests meets certain requirements set forth in the statute. The Secretary does not suggest that plaintiffs fail to meet these requirements.

FN3. The Secretary is authorized to assign the task of paying Part B claims to private insurance carriers. 42 U.S.C. § 1395u.

FN4. In 1986 Congress amended 42 U.S.C. § 1395ff to provide access to judicial review for certain Medicare Part B recipients dissatisfied with the carrier's determination of the amount of their benefits. Budget Reconciliation Act of 1986, Pub.L. No. 99-509, § 9341(a)(1)(B), reprinted in 1986 U.S.Code Cong. & Admin.News 1874, 2037. 42 U.S.C. § 1395ff previously provided:

(a) Entitlement to and amount of benefits
The determination of whether an individual is entitled to benefits under part A or part B of this subchapter, and the determination of the amount of benefits under part A of this subchapter, shall be made by the Secretary in accordance with regulations prescribed by him.
(b) Appeal by individuals
(1) Any individual dissatisfied with any determination under subsection (a) of this section as to-
(A) whether he meets the conditions of section 426 or section 426a of this title, or
(B) whether he is eligible to enroll and has enrolled pursuant to the provisions of part B of this subchapter, or section 1395i-2 of this title, or section 1819, or
(C) the amount of benefits under part A of this subchapter (including a determination

where such amount is determined to be zero)
shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.
(2) Notwithstanding the provisions of subparagraph (C) of paragraph (1) of this subsection, a hearing shall not be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $100; nor shall judicial review be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $1,000.
42 U.S.C. § 1395ff now provides:
(a) Entitlement to and amount of benefits
The determination of whether an individual is entitled to benefits under part A or part B of this subchapter, and the determination of the amount of benefits under part A or part B of this subchapter, and any other determination with respect to a claim for benefits under part A of this subchapter or a claim for benefits with respect to home health services under part B of this subchapter shall be made by the Secretary in accordance with regulations prescribed by him.
(b) Appeal by individuals
(1) Any individual dissatisfied with any determination under subsection (a) of this section as to-
(A) whether he meets the conditions of section 426 or section 426a of this title, or
(B) whether he is eligible to enroll and has enrolled pursuant to the provisions of part B of this subchapter or section 1395i-2 of this title,
(C) the amount of benefits under part A or part B of this subchapter (including a determination where such amount is determined to be zero), or
(D) any other denial (other than under part

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Case 1:07-cv-00844-ESH    Document 9-8    Filed 08/08/2007    Page 8 of 8 Page 8
Not Reported in F.Supp., 1990 WL 282590 (N.D.Tex.), Med & Med GD (CCH) P 39,056
(Cite as: Not Reported in F.Supp.)

B of subchapter XI of this chapter) of a claim for benefits under part A of this subchapter or a claim for benefits under re- spect to home health services under part B of this subchapter,

shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

(2) Notwithstanding paragraph (1)(C) and (1)(D), in the case of a claim arising-

(A) under part A, a hearing shall not be available to an individual under paragraph (1)(C) and (1)(D) if the amount in contro- versy is less than $100 and judicial review shall not be available to the individual un- der that paragraph if the amount in contro- versy is less than $1,000; or

(B) under part B, a hearing shall not be available to an individual under paragraph (1)(C) and (1)(D) if the amount in contro- versy is less than $500 and judicial review shall not be available to the individual un- der that paragraph if the aggregate amount in controversy is less than $1,000.

In determining the amount in controversy, the Secretary, under regulations, shall al- low two or more claims to be aggregated if the claims involve the delivery of similar or related services to the same individual or involve common issues of law and fact arising from services furnished to two or more individuals.

FN5. *Texas Medical Ass'n* deals with claims that arose prior to the 1986 amend- ments to 42 U.S.C. § 1395ff.

FN6. The administrative remedies avail- able under Part A to the claimants in *Ringer* are essentially identical to the rem- edies now provided to Part B claimants un- der the 1986 amendments to 42 U.S.C. § 1335ff.

FN7. The *Michigan Academy* court found it unnecessary to resolve the question whether the claim arose under the Medi- care Act. As 42 U.S.C. § 1395ff then read, no administrative or judicial review was available to Part B claimants except for carrier review. Thus, the Court reasoned, Congress could not have intended to apply 42 U.S.C. § 405(h) to claims such as those raised in *Michigan Academy* because "substantial statutory and constitutional challenges" would be unreviewable. Ab- sent clear and convincing evidence that Congress intended this result, the Court re- fused to adopt the approach. As noted above, 42 U.S.C. § 1395ff has now been amended to provide for both administrative and judicial review of the carrier's determ- ination.

FN8. In fact the regional director of HCFA testified in deposition that HCFA's operat- ing instructions and guidelines are "overturned a fairly substantial percentage of the time" by administrative law judges.

FN9. In a motion filed April 12, 1990 plaintiffs move to amend their complaint. Because the court concludes plaintiffs must first exhaust their administrative rem- edies, the court denies the motion.

N.D.Tex.,1990.

Colorado Clinical Labs, Inc. v. Newman

Not Reported in F.Supp., 1990 WL 282590 (N.D.Tex.), Med & Med GD (CCH) P 39,056

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THREE LOWER COUNTIES COMMUNITY          )
HEALTH SERVICES, INC., on behalf of itself          )
and others similarly situated          )
          )
                    Plaintiff,          )
          )
          v.          )          Case No. 1:07CV0844 (ESH)
          )
MICHAEL O. LEAVITT,  Secretary          )
of Health and Human Services,          )
          )
                    Defendant.          )
_____)

## ORDER

Upon consideration of Defendant's motion to dismiss, plaintiff's opposition thereto, and

the entire record herein, it is hereby

ORDERED that defendant's motion is GRANTED, and it is

FURTHER ORDERED that this action is DISMISSED WITH PREJUDICE.


Dated:_____          _____

                    ELLEN SEGAL HUVELLE
                    United States District Judge