UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THREE LOWER COUNTIES COMMUNITY HEALTH SERVICES INC., | ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | Civil Action No. 07-0844 (ESH) |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

## MEMORANDUM OPINION

Plaintiff Three Lower Counties Community Services, Inc. ("TLC") has filed this putative class action lawsuit seeking to enjoin the United States Department of Health and Human Services and its Secretary (collectively "HHS") from applying two cost limits -- a per visit payment "cap" and a physician productivity "screen" -- when making cost reimbursements under the Medicare program to Federally-Qualified Health Centers ("FQHCs"). Before the Court is defendants' motion to dismiss for lack of subject matter jurisdiction.[1] For the following reasons, the motion to dismiss will be GRANTED.

### BACKGROUND

Plaintiff, a non-profit corporation located in Princess Anne, Maryland, operates as a "health

---

[1] Defendants argue in the alternative that plaintiff lacks standing to pursue its claims. (Defs.' Mot. at 27-28.) Because this Court lacks subject matter jurisdiction, it is unnecessary to reach the issue of standing.

center" under the Public Health Services ("PHS") Act, 42 U.S.C. § 245b. (Compl. at ¶ 5.) The PHS Act authorizes grant payments to health centers for the provision of health services in medically-underserved communities. (*Id.*; Defs.' Mot. at 6.) Because it receives a grant under § 254b of the Medicare statute, plaintiff also qualifies as an FQHC, 42 U.S.C. § 1395x(aa)(4), and receives payment under the Medicare statute for the services that it provides to the program's beneficiaries. (Defs.' Mot. at 6.)

Medicare pays FQHCs an all-inclusive per visit payment amount based upon 80 percent of the facility's "reasonable costs" of furnishing services to Medicare beneficiaries. 42 U.S.C. § 1395l(a)(3). To maintain its status as an FQHC and to receive reimbursement for the services it provides, an FQHC must submit a detailed cost report to its designated financial intermediary. 42 C.F.R. § 405.2470(c)(2). The intermediary reviews the cost report and issues a "notice of program reimbursement" ("NPR"), which specifies the amount the provider is owed for the services it has provided. 42 C.F.R. § 405.2466(c).

If an FQHC is dissatisfied with the NPR, the Medicare statute and its implementing regulations outline an administrative process that the FQHC may follow to appeal the intermediary's determination as to its reimbursable costs. The FQHC may request a hearing before the intermediary if the amount in controversy is at least $1,000, but less than $10,000, 42 C.F.R. § 405.1809, or before the Provider Reimbursement Review Board ("PRRB" or the "Board") if the amount in controversy is more than $10,000. 42 U.S.C. §§ 1395oo(a)(1)-(2); 42 C.F.R. § 405.1835. If the PRRB has jurisdiction to consider the FQHC's claims, it holds a hearing and renders a decision. 42 C.F.R. § 405.1871(a). The PRRB's decision is subject to discretionary review by the Secretary. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875. After a final decision is issued, the

provider has 60 days to seek judicial review in the district court. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877.

As an FQHC, plaintiff's Medicare reimbursement is subject to the two cost limits at issue in this case: the "per visit payment limit" and the "productivity screen." (Compl. at ¶¶ 62, 68; Defs.' Mot. at 7.) On October 10, 2006, plaintiff sent a letter to the PRRB requesting a "ruling" as to whether PRRB had jurisdiction to consider a challenge to these two limits. (Defs.' Attach. 1, Ex. A [Oct. 10, 2006 letter from TLC to PRRB].) Plaintiff explained its understanding that PRRB lacked jurisdiction to consider its claims because it would be unable to provide appropriate relief, *i.e.*, "a finding that the limits are unlawful under APA standards, and an order that would enjoin their further use and require corrective action to the extent the limits have adversely affected Medicare payments to FQHCs." (*Id.* at 2.) Plaintiff also requested that its challenge be placed immediately on the appeals docket, in the event that the PRRB determined that it had jurisdiction. (*Id.*)

On November 9, 2006, the Chair of the PRRB sent plaintiff a letter advising that "the Board does not furnish advisory opinions on jurisdiction. The only jurisdictional rulings issued by the Board involve cases pending before it." (Defs.' Attach. 2, Ex. B [Nov. 9, 2006 letter from S. Cochran to TLC].) In response to the PRRB's letter, plaintiff acknowledged that even though the claims it was raising were not connected to a specific cost report, it was requesting an opinion from the PRRB as to how a provider should "challenge a regulation or cost limit on its face." (Defs.' Attach. 3, Ex. C [Dec. 21, 2006 letter from TLC to PRRB] at 1.) Plaintiff went on to state that, based upon the PRRB's earlier letter, plaintiff "presume[d] than [sic] the PRRB has no administrative process to challenge these cost limits on their face." (*Id.*)

On January 4, 2007, the PRRB sent plaintiff a letter assigning it a case number. (Defs.'

3

Attach. 4, Ex. D [Jan. 4, 2007 letter from PRRB to TLC].) On January 16, 2007, plaintiff responded, stating that it would "rely" on the Board's letter of November 9, 2006, which to plaintiff's understanding "indicat[ed] that no relief could be afforded through the process . . . [the PRRB's] letter would commit . . . [plaintiff] to follow." (Defs.' Attach 5, Ex. E [Jan. 16, 2007 letter from TLC to PRRB] at 1-2.)  Plaintiff concluded by stating that "we already have a timely and otherwise proper decision of the Board, and intend to rely on it any future action we may take . . . ." (*Id.* at 2.)

Approximately three months later, the PRRB issued a decision dismissing plaintiff's appeal for lack of jurisdiction. (Defs.' Attach. 6, Ex. F [Decision of the Board].)  The PRRB concluded that a provider has the right to a hearing with respect to costs claimed on the cost report if "dissatisfied" with the final determination of the intermediary, if the amount in controversy is $10,000 or more, and if a request for a hearing is filed within 180 days of the determination. (*Id.* at 2.)  The PRRB found that plaintiff had failed to meet any of these jurisdictional prerequisites, and therefore its appeal had to be dismissed on jurisdictional grounds. (*Id.*)   The PRRB held, however, that if and when plaintiff was able to comply with these requirements, the PRRB would, at that time, determine if it had jurisdiction over the substantive issue and whether expedited judicial review would be appropriate. (*Id.*)

On May 4, 2007, plaintiff filed this action, seeking an order declaring the per visit cap and the productivity screen "arbitrary, capricious, and otherwise unlawful"; enjoining the Medicare program from using these two cost measurement mechanisms in determining payments to FQHCs; and directing Medicare to re-calculate past FQHC payment rates paid under the Medicare program without the use of these two cost measures.

**ANALYSIS**

It is axiomatic that "[a] federal court's subject matter jurisdiction, constitutionally limited by article III, extends only so far as Congress provides by statute." *Commodity Futures Trading Com'n v. Nahas*, 738 F.2d 487, 492 (D.C. Cir. 1984). Therefore, "the court must scrupulously preserve the precise jurisdictional limits prescribed by Congress." *Id.* at 492 n.9. Plaintiff's complaint cites 28 U.S.C. § 1331 as the primary basis for this Court's jurisdiction.[2] Defendants respond by arguing that because plaintiff's claims arise under the Medicare Act, plaintiffs must exhaust their administrative remedies under that statute before seeking judicial review.

In 42 U.S.C. § 405(h), incorporated into the Medicare Act by 42 U.S.C. § 1395ii, Congress expressly precluded federal question jurisdiction over claims "arising under" the Medicare Act. Section 405(h) provides that "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 . . . of title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h). A "[p]etitioner's claim 'arises under' the Medicare Act within the meaning of this provision . . . [when] both the standing and the substantive basis for the presentation of the claim are the Medicare Act." *Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449, 456 (1999) (internal quotation marks

---

[2] In its Motion to Dismiss, defendants argue that plaintiff may not assert jurisdiction under either 28 U.S.C. § 1343 or 5 U.S.C. § 702, both of which are also referenced in plaintiff's complaint. (Defs.' Mot. at 18 n.3.) Plaintiff fails to respond to this argument, and therefore the Court will treat this argument as conceded. *See Hopkins v. Women's Div., General Bd. of Global Ministries*, 238 F.Supp.2d 174, 178 (D.D.C. 2002) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). *See also Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F.Supp.2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").

omitted).  As the Supreme Court has explained, § 405(h) "demands the 'channeling' of virtually all legal attacks through the agency['s administrative process]" before such challenges made be heard in federal court.  *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

Significantly, plaintiff does not appear to argue that its claims do not arise under the "Medicare Act."[3]  Rather, plaintiff contends that it has sufficiently exhausted its administrative remedies through its letter correspondence with the PRRB and that to require it to do more would be futile.  (*See* Opp'n at 1.)   This argument is unavailing.  Federal subject matter jurisdiction over claims arising under the Medicare Act is permitted only upon the completion of the administrative process outlined in that statute and its implementing regulations.   *See* 42 U.S.C. § 405(g) & (h).  The Supreme Court has made clear that if this process is available, it must be followed, even if it is time-consuming, *see Illinois Council*, 529 U.S. at 20, 22-23, and even if the agency cannot grant the relief sought.[4]  *See id.* at 23-24.   Nor can plaintiff circumvent the Medicare appeals process by

---

[3] Plaintiff's complaint indicates that this case arises under the Medicare Act and the Public Health Services Act.  (Compl. at ¶ 2.)  In its opposition, however, plaintiff states, without further elaboration, that it "cannot . . . be accurately stated that TLC's legal claim against the two Medicare payment limits is one that derives . . . its 'standing and substantive basis for the presentation' of its claim wholly from the Medicare Act." (Opp'n at 18 (citing *Illinois Council*, 529 U.S. at 11).)

To the extent that plaintiff may be trying to insinuate that its case does not arise under the Act, it is mistaken given the Supreme Court's clear interpretation of § 405(h).  Plaintiff seeks a ruling from this Court invalidating two cost limits so as to increase the reimbursement that it and other FQHCs are entitled to under the Medicare Act.  Reviewing courts have "required the exhaustion of administrative remedies for any claim that essentially [seeks] additional reimbursement under the Act."  *National Medical Enterprises, Inc. v. Brown*, 725 F.Supp.1, 5 (D.D.C. 1989).  *See also Heckler v. Ringer*, 466 U.S. 602, 614 (1984) (holding that plaintiff's alleged constitutional and administrative law violations were "inextricably intertwined" with claims for "benefits [which] should be channeled first into the administrative process . . . .").

[4] Notably, the administrative process does provide an exception for expedited judicial review ("EJR").  *See* 42 U.S.C. 1395oo(f)(1) (a provider may obtain "judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matter in controversy whenever the Board determines . . . that it is without authority to decide

relying on its correspondence with the PRRB. *See e.g.*, *Masey v. Humana, Inc.*, 2007 WL 2363077, at *10 (M.D. Fla. Aug. 16, 2007) (exhaustion requirement not satisfied by plaintiff's phone calls to helpline); *Colorado Clinical Labs v. Newman*, 1990 WL 282590, at * 2 (N.D. Tex. May 24, 1990) (exhaustion requirement not satisfied by letters written to the Health Care Financing Administration); *Cardiac Monitoring Srvs., Inc. v. Blue Cross Blue Shield*, 807 F.Supp. 1422, 1427 (E.D. Ark. 1992) (holding that a "letter writing campaign is not the type of administrative exhaustion envisioned by the Act."). Plaintiff may not choose its own path to federal court. Rather plaintiff "must pursue [its] claim under [§ 405(g)] in the manner which Congress has provided." *Ringer*, 466 U.S. at 622.

Plaintiff also argues in the alternative that, as an FQHC, it should not be subject to the exhaustion requirement. (Opp'n at 7, 14.) Plaintiff emphasizes that FQHCs provide comprehensive healthcare services in underserved, poor communities whose residents would otherwise lack access to adequate medical care. (*Id*. at 7-8.) Plaintiff explains that the revenue shortfalls that allegedly occur as result of the two challenged costs limits result in the denial of care to other members of these communities. (*Id.* at 12.) Finally, plaintiff notes that under Section 330 of the PHS Act, every FQHC is required to "make every reasonable effort to collect appropriate reimbursement for its costs

---

the question . . . ."). This exception permits the PRRB to grant EJR if "it has jurisdiction over an appeal but lacks the authority to decide the controlling question of law . . . ." *Anaheim Memorial Hosp. v Shalala*, 130 F.3d 845, 848 (9th Cir. 1997). (Defs.' Mot. at 10.) In order to qualify for EJR, however, plaintiff must still present a claim for benefits and receive a notice of program reimbursement with which it is dissatisfied. Only the subsequent hearing before the PBBR is waivable at the discretion of the PBBR. *See Ringer*, 466 U.S. at 617 ("[T]he exhaustion requirement of § 405(g) consists of a nonwaivable requirement that a claim for benefits shall have been presented to the Secretary, and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant.") (internal quotation marks and citation omitted). Here, plaintiff claims to have pursued the EJR process by sending a letter to its intermediary, (Opp'n at 5), but admits that it did not complete the steps necessary to qualify for EJR. (*Id.* at 3.)

in providing health services . . . ." 42 U.S.C. § 254b(k)(3)(F). (Opp'n at 9.)   These "unique" qualities of FQHCs, plaintiff argues, warrant an exemption from the exhaustion requirement.

In considering whether § 405(h) applies, the question is whether its application "would have the practical effect of denying [the] plaintiff[] judicial review." *American Lithotripsy Society v. Thompson*, 215 F.Supp.2d 23, 29 (D.D.C. 2002). *See also Illinois Council*, 529 U.S. at 22. The probative facts are "the severity of the penalty incurred by a violation and the ability of plaintiffs' members to have access to administrative review." *Id. See also Illinois Council*, 529 U.S. at 21-24.. Disregarding this standard, plaintiff does not argue that the penalties that its organization faces make pursuing its administrative remedies cost-prohibitive,[5] or that FQHCs lack access to administrative review. Rather, plaintiff contends that those members of the community it serves who do *not* receive health care from its facility because of cost limitations have no access to administrative review, and therefore plaintiff should be permitted to seek judicial review on their behalf. (Opp'n at 15.)

This argument fails for several reasons. First, plaintiff, and all other FQHCs on behalf of whom this suit was filed, have an avenue for judicial review under the Medicare Act under § 405(g). Plaintiff cannot bypass the constraints of this process by professing to bring its suit on behalf of those who are eligible for, but are not receiving health center services. Second, plaintiff has failed to provide any factual basis for its assertion that these cost limits have resulted in the denial of service to eligible non-patients. The approach plaintiff advocates would permit all providers to bypass the Medicare appeals process simply by alleging that their claims were brought on behalf of the additional people who could be treated, were the provider to receive more compensation.

---

[5] In fact, plaintiff concedes that it has been subject to one or both of these cost limitations in the past and expects to be subject to them again in the near future. (*Id.* at 3.)

Moreover, the exception to § 405(h) upon which plaintiff relies applies only in the limited circumstances where the "channeling requirement [turns] into *complete* preclusion of judicial review." *Illinois Council*, 529 U.S. at 22 (quoting *Haitian Refugee Center*, 498 U.S. 479, 496-97 (1991) (emphasis in original)). There is no question that judicial review is available here. Plaintiff has both the ability and the incentive to challenge these Medicare cost limits, and it may do so once it has exhausted its administrative remedies through the statutorily provided appeals process.[6] Until it does so, however, this Court lacks jurisdiction over its claims.

## CONCLUSION

For the reasons stated herein, defendants' Motion to Dismiss is GRANTED, and the above-captioned action is dismissed without prejudice for lack of subject matter jurisdiction.

---

[6] The cases plaintiff cites in support of its eligibility for the exemption are inapposite. For instance, in *American Lithotripsy Society v. Thompson*, 215 F.Supp.2d 23 (D.D.C. 2002), this Court found that plaintiffs were entitled to judicial review under federal question jurisdiction of a regulation that required urologists and lithotripsy centers to enter into an arrangement with hospitals in order to receive payment for lithotripsy services provided to Medicare beneficiaries. *Id.* at 25, 30. The result of this regulation was that hospitals were receiving a large part of the Medicare fees, while the urologists and lithotripsy centers provided all of the equipment and personnel to perform the service. *Id.* at 25. The Court concluded that applying § 405(h) would have the practical effect of denying judicial review because heavy fines and criminal penalties would prevent urologists and lithotripsy centers from violating the regulation and because Medicare enrollees had no incentive to challenge a regulation which only affected how the payment for their treatment was allocated. *Id.* This case does not support plaintiff's contention that the administrative appeal process available to it may be avoided by bringing the its claims on behalf of non-patients.

The other case plaintiff cites in its Opp'n at 16, *American Chiropractic Ass'n v. Shalala*, 131 F.Supp.2d 174 (D.D.C. 2001), was subsequently reversed as to the very part of the holding upon which plaintiff relies. *See American Chiropractic Ass'n v. Leavitt*, 431 F.3d 812 (D.C. Cir. 2005).

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: October 9, 2007