UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THREE LOWER COUNTIES COMMUNITY HEALTH )
SERVICES, INC., *et al.*, )
)
    *Plaintiffs,* )
)
v. ) Case No. 1:07-cv-00844
)
U.S. DEPARTMENT OF HEALTH AND HUMAN )
SERVICES, *et al.*, )
)
    *Defendants.* )

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION
TO MOTION FOR RECONSIDERATION**

Plaintiff, Three Lower Counties Community Services, Inc. ("TLC"), hereby submits this reply in response to defendant's November 13, 2007 Opposition to Plaintiff's Motion for Reconsideration (the "Opposition"). TLC seeks reconsideration of the Court's Order and Memorandum Opinion dated October 9, 2007 granting the defendants' motion to dismiss.

As the Opposition points out (at 1-2), Rule 59(e) permits a motion to alter or amend a judgment no later than ten (10) days after entry of the judgment. The need to correct a clear error or prevent manifest injustice is one permissible basis for a Rule 59(e) motion. *Jung v. Ass'n of American Med. Colleges*, 184 Fed. Appx. 9, 13 (D.C. Cir. 2006). Plaintiff explained in its Motion for Reconsideration that the Court's Memorandum Opinion (at 6, n.4) noted that the PRRB has an "expedited judicial review" process available under 42 U.S.C. § 1395oo(f)(1), presumably because the Court believed that TLC could and should have attempted to use that process. TLC's reconsideration motion is intended to clarify the fact that TLC did attempt to use this process by submitting a formal, written request for expedited judicial review (in October

1

2006) referencing the applicable statutory provision (§ 1395oo(f)(1)). *See* Ex. A to Defs. Motion to Dismiss; TLC's Opposition to Motion to Dismiss at 4-5. For that reason, plaintiff's reconsideration motion explained that the cases cited in the Memorandum Opinion (at 6-7) involving such informal actions as a plaintiff's phone calls to a helpline (*Masey v. Humana, Inc.*, 2007 WL 2363077 at * 10 (M.D. Fla. Aug. 16, 2007)) and a "letter writing campaign" (*Cardiac Monitoring Srvs., Inc. v. Blue Cross Blue Shield*, 807 F. Supp. 1422, 1427 (E.D. Ark. 1992)) do not reflect what TLC did in this case.

Thus, TLC did not attempt to "circumvent the Medicare appeals process" (Memorandum Opinion at 6), but instead sought to exhaust that process by (among other steps it took) utilizing the expedited decision procedure under § 1395oo(f)(1). *See* TLC's Opposition to Defendant's Motion to Dismiss at 4-5; Ex. A. to Defendant's Motion to Dismiss. TLC's reconsideration motion is therefore intended to clarify, consistent with Rule 59 (e), a fact on which the Memorandum Opinion is premised.

According to the expedited judicial review procedures set forth in 42 C.F.R. § 405.1842, the PRRB had thirty days in which to respond to TLC's request. The only response TLC received from the PRRB was the November 9, 2006 letter from its Chair (Ex. B. to Def.'s Motion) stating "[t]his letter is to advise you that the Board does not furnish advisory opinions on jurisdiction. The only jurisdictional rulings issued by the Board involve cases pending before it." Ex. B to Def.'s Motion, November 9, 2006 letter from S. Cochran. TLC received other notices from the PRRB - - despite the fact that the thirty day clock had run - - that then attempted to explain the basis for the Board's actions and provide a *post hoc* rationale for why TLC could not present its challenge in federal court. Ex. D. to Def's Motion.

HHS' position is that TLC's attempt to avail itself of the expedited decision process was somehow inchoate because no cost report was attached to TLC's request for expedited review. Yet the Supreme Court's decision in *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S., 399, 108 S. Ct. 1255 (1988) demonstrates that providers could get before the PRRB and claim "dissatisfaction, within the meaning of the statute, without incorporating their challenge in the cost reports filed with their fiscal intermediaries." *Id*. at 1259. The *Bethesda Hosp*. decision was premised on the fact that the providers' cost reports in that case presented a "self-disallowance" (*id*. at 1257) of the costs that were in excess of those permitted by the challenged regulation. As a result, the cost reports would not present the providers' challenge to the regulation - - the cost reports were essentially a nullity. The Court therefore concluded that, "By objecting to the regulation in the first instance in proceedings before the Board, the petitioners protected their right to judicial review. We hold that the plain language of the statute demonstrates that the Provider Reimbursement Review Board had jurisdiction to entertain this action." *Id*. at 1260. As TLC explained in its reconsideration motion (at 3-4), any cost report that TLC presents, whether to the intermediary or the PRRB, will reflect its self-disallowance of costs in excess of the two regulatory limits challenged in this case. TLC's cost report will not present its regulatory challenge to the limits at issue here. TLC is in a very similar position to that of the providers in *Bethesda Hosp*. - - except TLC did try to go before the PRRB.

Contrary to the defendant's assertion (Opposition at 4), the Supreme Court clearly decided that the providers could bring their case directly to the PRRB without a cost report in hand - - the Supreme Court did not eliminate the exhaustion requirement (as set forth in *Heckler v. Ringer*, 466 U.S. 602 (1984) and related cases), but eliminated the need for that exhaustion to take place through the cost report where the cost report would add nothing to the process.

Defendant's Opposition (at 6) recognizes that the Court found that TLC "failed to provide any factual basis" for its argument that the cost limits at issue have resulted in the denial of service to theoretically harmed patients. Memorandum Opinion at 8. In this regard, TLC's motion for reconsideration pointed out that the U.S. Congress found that when the Medicaid (and similarly the Medicare) programs fail to pay their fair share for services these programs compromise "the ability of the centers to meet the primary care needs of those without any public or private coverage whatsoever." H.R. Rep. No. 101-247 at 392-3, *reprinted in* 1989 U.S.C.A.A.N. 2118-9; TLC's Motion for Reconsideration at 6, n. 2. The Memorandum Opinion did not consider that Congress has already made the requisite findings of fact linking the Section 330 grant program to other sources of revenue from Government programs. Nowhere in their Reply to TLC's Opposition to the Motion to Dismiss or in opposing TLC's reconsideration motion did defendant ever address the substance of TLC's arguments that Congress has already determined that injury in fact would be caused to a health center's actual or prospective patients whose care was or would be supported by Section 330 (not another federal program) whenever Medicaid (or Medicare) paid less than its share for the center's services to its beneficiaries. In short, TLC's legal claims against the two Medicare payment limits does not derive its "standing and substantive basis for the presentation" of its claim wholly from the Medicare Act. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 11-12 (2000) citing *Heckler v. Ringer*, 466 U.S. 602 (1984) and *Weinberger v. Salfi*, 422 U.S. 749 (1975). To hold that it did would be to deny Congress' explicit connection of harm to non-Medicaid (including Medicare) patients - - both actual patients and prospective patients - - and its legislation designed to prevent that harm challenged by TLC in this case and would constitute the type of "manifest injustice" contemplated by Rule 59(e).

November 20, 2007                              Respectfully submitted,

*[signature: Kathy S. Ghiladi]*
_____
James L. Feldesman (D.C. Bar No. 023796)
Kathy S. Ghiladi (D.C. Bar No. 435484)
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., Second Floor
Washington, D.C. 20036
(202) 466-8960 (telephone)
(202) 293-8103 (facsimile)

*Attorneys for Plaintiffs*